JOSHUA A. BERMAN
212.704.6198 telephone
212.704.6288 facsimile
joshua.berman@troutmansanders.com

**TROUTMAN SANDERS**

TROUTMAN SANDERS LLP
Attorneys at Law
875 Third Avenue
New York, New York  100022
212.704.6000 telephone
troutmansanders.com

July 2, 2015

**VIA ECF**
Hon. Frederic Block
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *XYZ Two Way Radio Service, Inc., et al. v. Uber Technologies, Inc., et al.*,
             1:15-cv-03015-FB-CLP

Dear Judge Block:

      This firm represents Defendants in the above-captioned action.  We write, in accordance with Rule 2A of Your Honor's Individual Motion Practices, to outline the bases for Defendants' anticipated Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

A.      <u>Summary of the Lawsuit</u>

      Plaintiffs are traditional "black car" companies who operate in and around New York City.  Defendant Uber Technologies, Inc. ("Uber") is a pioneering technology company that invented a cutting-edge software application, the Uber App, that lets independent, third party drivers—operating their own vehicles, on their own schedules—field requests from passengers using smartphones.  The six other defendants are bases that, in compliance with the Taxi and Limousine Commission's ("TLC") regulations, facilitate the operation of Uber's platform in New York.  Because of its innovative technology, outstanding response time, and exceptional service, Uber is changing the way people move in New York City and around the world.

      At its core, this lawsuit is Plaintiffs' attempt to achieve through litigation what they have been unable to accomplish by providing improved service in the market or through their lobbying of the TLC.  While Plaintiffs seek to bar Uber from New York by means of this litigation, their strategy is misplaced.  Plaintiffs' quarrel is with the regulator—the TLC—which Plaintiffs argue has both promulgated unfair rules and failed to enforce them in the manner Plaintiffs desire.  The fact that Plaintiffs' lawsuit is really directed at the TLC is confirmed by the fact that just a few weeks after filing this suit against Uber, Plaintiffs filed an Article 78 proceeding against the City of New York, the TLC, and the TLC's Commissioner, captioned *XYZ Two Way Radio Service, Inc. v. The City of New York, et al.*, 5693/15 (N.Y. Sup. Ct. Qns. Cty.) (the "TLC Action").  In the TLC Action, Plaintiffs make the identical accusations that they make here—in some cases, cut-and-pasted directly from the present Complaint—regarding the TLC's alleged failure to enforce regulations on "electronic hails" and the operation of black car bases.  Plaintiffs also demand the exact relief in the TLC Action that they seek here, namely, another award of damages (raising questions of double recovery) and an injunction that would substantially impair Uber's operations in the City.  Plaintiffs' objective is clear:  By means of their scattershot litigation strategy, Plaintiffs wish to protect their outdated and inefficient business model—to the detriment of the City's consumers.

In their Complaint, Plaintiffs set forth five causes of action: Two Lanham Act claims, under 15 U.S.C. §§ 1125(a)(1)(B) and 1125(a)(1)(A); two claims under §§ 349 and 350-a of the New York General Business Law ("GBL"); and a common law claim for tortious interference.

B.   Bases for Dismissal of the Complaint

As outlined in preliminary form below, each claim is subject to dismissal.

1.   Defenses Common to All Lanham Act and GBL Claims

Plaintiffs' Lanham Act and GBL claims are premised, in part, on the contention that Uber's App functions as an impermissible form of electronic "hailing," which allegedly violates TLC regulations permitting only medallion taxis to accept "hails." (Transportation through non-medallion vehicles, by contrast, must be "pre-arranged." *Compare* 35 RCNY § 55-19(a) *to* § 54-19(a)(1).) Based on this erroneous premise, Plaintiffs allege that Uber's statements regarding its compliance with applicable law are misleading.

First, Plaintiffs' contention is simply wrong. The TLC has taken the position that Uber's App facilitates the "pre-arrangement" of transportation—albeit in a faster, more reliable, and more convenient way than Plaintiffs' outdated systems. Second, courts deciding Lanham Act claims just like these against Uber have uniformly held that "[w]hether drivers who use the Uber app comply with, or are even subject to, local ordinances is not a proper basis for a Lanham Act claim." *Greater Houston Transp. Co., et al. v. Uber Techs., Inc., et al.*, Civ. No. 14-0941, 2015 U.S. Dist. LEXIS 28867 (Mar. 10, 2015) (collecting cases); *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996) ("[E]ntertaining claims like the plaintiff's would transform the Lanham Act into a handy device to reach and decide all sorts of local law questions."). The logic of these decisions applies with equal force to Plaintiffs' GBL claims: Unsupported (and incorrect) allegations that Uber does not comply with municipal regulations cannot, as a matter of law, function as the basis of a false advertising claim—regardless of whether the claim is clothed in terms of the Lanham Act or a state law analogue like the GBL.[1] Ultimately, although Plaintiffs go to great lengths to portray this case as one arising under the Lanham Act and the GBL, this is posturing. Plaintiffs' real objective is to enlist this Court in their cause by standing in the shoes of the TLC and issuing rules to regulate Uber, a function that is indisputably at the core of the TLC's authority. Plaintiffs lack standing to seek such relief in this proceeding.

2.   Lanham Act: 15 U.S.C. § 1125(a)(1)(B)

Plaintiffs' false advertising claim under § 1125(a)(1)(B) also fails because the very statements Plaintiffs complain about are nothing other than non-actionable "puffery." For example, Plaintiffs identify the following: (i) "Wherever you are around the world, Uber is committed to connecting you to the safest ride on the road."; (ii) "The specifics vary depending

---

[1] Plaintiffs' position is also disingenuous. Both Elite and XYZ are actively marketing their own apps that mimic Uber's. XYZ's app offers customers the option for "pick up now," while Elite's offers customers the option for immediate dispatch. If Uber's App violates the TLC's regulations—which it does not—Plaintiffs' apps do too.

on what local governments allow, but within each city we operate, we aim to go above and beyond local requirements to ensure your comfort and security."; and (iii) "We believe deeply that, alongside our driver partners, we have built the safest transportation option in 260 cities around the world." (Compl. ¶¶ 40, 41, 43.)

These statements are general and aspirational, not specific or measurable. Courts have consistently found that almost verbatim formulations are insufficient to support a claim under the Lanham Act. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (it is "well established" that "statements [that] are explicitly aspirational, with qualifiers such as 'aims to,' [and] 'wants to,'" are puffery); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1256 (Fed. Cir. 2012) (phrase "SIMPLY SAFER [is] a general claim of superiority regarding safety of petitioner's syringes and thus amounts to puffery."); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570-71 (statements that "Ford is a worldwide leader in automotive safety"; is "designing safety into … cars and trucks"; and Ford is "dedicated" to providing "safer vehicles to [the] consumer" were non-actionable puffery).

    3.    <u>Lanham Act: 15 U.S.C. § 1123(a)(1)(A)</u>

Plaintiffs' second Lanham Act claim is for false endorsement. Plaintiffs allege that "[w]hen a car with Plaintiffs' service marks and other identifying features arrives at the pick-up location as the Uber assigned black car in response to an Uber customer's request and places a sign bearing Uber's name, logo and colors in its window, consumers are likely to believe Plaintiffs are affiliated or associated with Uber." (Compl. ¶ 91). The claim fails because the Lanham Act protects against only confusion that actually affects "the purchasing … of the goods or services in question." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991); *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 366 (S.D.N.Y. 2014) (Lanham Act "protects only against mistaken purchasing decisions and not against confusion generally."). In their Complaint, Plaintiffs allege only that Uber's actions are "likely to cause confusion." (Compl. ¶ 88.) Plaintiffs fail entirely to plead that the alleged confusion actually affects consumers' purchasing decisions. To the contrary, Plaintiffs acknowledge that purchases through Uber's platform are initiated and completed before any car arrives and before the customer can see—let alone be confused by—Plaintiffs' decal or logos. (*See* Compl. ¶ 32-33.)

    4.    <u>Plaintiffs' GBL Claims</u>

Plaintiffs' claims under §§ 349 and 350-a of the GBL are premised on the same alleged "misrepresentations" as their Lanham Act claims. The claims are an undisguised attempt to backstop their weak Lanham Act claims with analogous claims under state law. However, claims under §§ 349 and 350-a, like the Lanham Act, cannot be based on puffery. *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) (statement that cancer-screening product "present[ed] cells with unprecedented clarity" was puffery); *Lacoff v. Buena Vista Publ'g., Inc.*, 705 N.Y.S.2d 183, 191 (N.Y. Sup. Ct. 2000) (statements such as "How We Beat the Stock Market—And How You Can Too" were "simply puffery or opinion").

Plaintiffs' GBL claims also fail because Plaintiffs lack standing. Sections 349 and 350 protect against injury to the public. *See N.Y. Pub. Interest Research Group, Inc. v. Ins. Info. Inst.*, 140 Misc. 2d 920, 920 (N.Y. Sup. Ct. 1988). Where the alleged injury is economic harm to a plaintiff's business, New York courts dismiss claims. *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 548 n.13 (S.D.N.Y. 2014) ("[C]ourts routinely reject a competitor's Sections 349 and 350 claims if the gravamen of the complaint is . . . harm to plaintiff's business rather than harm to the public interest in New York at large."); *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004).

     5.     <u>XYZ's Tortious Interference Claim</u>

The Complaint's tortious interference claim, brought only by XYZ, is based on the allegation that Uber "induced XYZ's drivers to breach [their] contractual obligations to XYZ" by allowing XYZ's drivers to partner with Uber despite the exclusivity provisions contained in XYZ's contracts. (Compl. ¶¶ 96, 99, 169.) The claim fails because XYZ has not alleged that Uber committed any independently wrongful conduct, which is a necessary element of tortious interference. *See Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (N.Y. 2004) (to state a claim for tortious interference, "the defendant's conduct must amount to a crime or an independent tort."). In the Complaint, XYZ acknowledges that Uber "entice[s] drivers" by offering "pricing and other benefits" that XYZ does not provide. (Compl. ¶ 101). Far from being improper or independently tortious, Uber's pursuit of its own legitimate business interests serves as a complete defense to XYZ's claim. *See Levista, Inc. v. Ranbaxy Pharms., Inc.*, Civ. No. 09-0569, 2010 U.S. Dist. LEXIS 11136 (E.D.N.Y. Feb. 4, 2010) (claim for tortious interference must be dismissed where "a defendant shows that the interference [wa]s intended, at least in part, to advance its own interests, [because] then it was not acting solely to harm the plaintiff.").

We thank the Court in advance for its attention to this matter.

                                                       Respectfully submitted,

                                                       Joshua A. Berman

cc:     All Counsel of Record (via ECF)