**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XYZ TWO WAY RADIO SERVICE, INC. and ELITE LIMOUSINE PLUS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., WEITER, LLC, HINTER, LLC, GRUN, LLC, UNTER, LLC, SCHMECKEN, LLC, and DANACH-NY, LLC, <br><br> *Defendants*. | **Civil Action No.: 1:15-cv-03015-FB-CLP** <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel: 212-704-6000
Fax: 212-704-6288

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION ................................................................................................... 1

SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT .................................. 3

    A.    E-Hail Allegations ............................................................................ 3

    B.    Allegations Relating To Uber's Safety Measures................................ 3

    C.    Allegations Relating To Plaintiffs' False Association Claim ............... 5

    D.    Allegations Regarding "Interference With Contractual Relations"........ 5

STANDARD OF REVIEW ........................................................................................ 5

PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF.............................. 6

I.    Plaintiffs Fail To State A Lanham Act Claim For False Advertising............................. 6

    A.    Plaintiffs Cannot Premise A Lanham Act Claim Upon Alleged Violations Of Local Law. ....................................................................... 6

    B.    Plaintiffs Misstate Facts In The Public Record In Order To Manufacture "Misleading" Statements For Purposes Of Their Lanham Act Claim. ................................................................................ 8

    C.    Plaintiffs Cannot Premise Their Claim On Non-Actionable Puffery...................................................................................... 10

    D.    Plaintiffs Fail to Plead That Uber's Alleged Misrepresentation Proximately Caused Their Alleged Injuries........................................ 13

II.    Plaintiffs Fail To State A Lanham Act Claim For False Association............................. 14

    A.    Plaintiffs Fail To Allege They Have Recognizable Trademarks. ........................ 14

    B.    Plaintiffs Fail To Allege Uber "Used" Their Marks. ........................... 14

    C.    Plaintiffs Cannot Premise Their False Association Claim On Alleged Confusion That Occurred After The Point-Of-Sale. ............................ 16

III.    Plaintiffs Fail To State A Claim Under The GBL ........................................................ 16

    A.    Plaintiffs Lack Standing To Bring Claims Under The GBL.............................. 16

-i-

**TABLE OF CONTENTS**
(continued)

                                                                              **Page**

B.      Plaintiffs' Claims Under §§ 349 and 350 Fail For The Same
        Reasons As The Lanham Act Claim For False Advertising. .............................. 19

C.      Plaintiffs' § 350 Claim Fails Because Plaintiffs Do Not Allege
        That They Relied On Any Alleged Misleading Statements By
        Uber............................................................................................................ 19

IV.   Plaintiffs Fail To State A Claim For Tortious Interference With Contract Or
      Tortious Interference With Business Relations ............................................................ 20

A.      Plaintiffs Fail To State A Claim For Tortious Interference With
        Contract....................................................................................................... 20

B.      The Complaint Fails To State A Claim For Tortious Interference
        With Business Relations .............................................................................. 21

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

**Case**                                                                    **Page(s)**

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ...............................................................17, 18

*Ackerman v. Coca-Cola Co.*,
    Civ. No. 09-395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ........................20

*AIM Int'l Trading, LLC v. Valcucine S.p.A.*,
    Civ. No. 02-1363, 2003 U.S. Dist. LEXIS 8594 (S.D.N.Y. May 21, 2003) ..........................21

*Am. Preferred Prescription, Inc. v. Health Mgmt.*,
    252 A.D.2d 414 (1st Dep't 1998) ...............................................................21

*Anesthesia Assoc. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*,
    59 A.D.3d 473 (2d Dep't 2009) ...............................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................5

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital I, Inc.*,
    Civ. No. 11-0505, 2011 U.S. Dist. LEXIS 69168 (S.D.N.Y. June 27, 2011) ..........................8

*Bose v. Interclick, Inc.*,
    Civ. No. 10-9183, 2011 U.S. Dist. LEXIS 93663 (S.D.N.Y. Aug. 17, 2011) ........................21

*Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*,
    Civ. No. 13-10769, 2014 U.S. Dist. LEXIS 42063 (D. Mass. Mar. 27, 2014) ......................13

*Brinn v. Syosset Pub. Library*,
    61 F. Supp. 3d 247(E.D.N.Y. 2014) ...............................................................20

*Cantor Fitzgerald Assocs., LP v. Tradition N. Am., Inc.*,
    299 A.D.2d 204 (1st Dep't 2002) ...............................................................23

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004) ...............................................................23

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    547 F.3d 115 (2d Cir. 2008) ...............................................................22

*City of New York v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616 (2009) ...............................................................19

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ...............................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Cortec Indus. Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)................................................................................8

*Dial A Car, Inc. v. Transp., Inc.*,
    82 F.3d 484 (D.C. Cir. 1996) ..........................................................................7

*Discover Grp., Inc. v. Lexmark Int'l, Inc.*,
    333 F. Supp. 2d 78 (E.D.N.Y. 2004) .............................................................20

*Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*,
    871 F.2d 697 (7th Cir. 1989) .........................................................................14

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*,
    695 F.3d 1247 (Fed. Cir. 2012)......................................................................11

*Flava Works, Inc. v. Gunter, Inc.,*
    Civ. No. 10-6517, 2011 U.S. Dist. 50067 (N.D. Ill. May 10, 2011) ...........15

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008)............................................................5

*Greenwich Taxi Co., Inc. v. Uber Techs., Inc.*,
    Civ. No. 14-733, 2015 U.S. Dist. Lexis 106505 (D. Conn. Aug. 13, 2015)................... passim

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183 (N.Y. 1980) ..........................................................................23

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003)...........................................................17

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
    86 F.3d 619 (6th Cir. 1996) ..........................................................................15

*In re Ford Motor Co. Sec. Litig.*,
    381 F.3d 563 (E.D.N.Y. 2013).......................................................................11

*In re Frito-Lay N. Am., Inc.*,
    Civ. No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)................5

*Ivy Mar Co. v. C.R. Seasons, Ltd.*,
    Civ. No. 95-0508, 1998 U.S. Dist. LEXIS 15902 (E.D.N.Y. Oct. 7, 1998) (Block, J.) ..........17

*KatiRoll Co. v. Kati Junction, Inc.*,
    33 F. Supp. 3d 359 (S.D.N.Y. 2014)............................................................16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Krasnyi Oktyabr, Inc. v. Trilini Imps.*,
   578 F. Supp. 2d 455 (E.D.N.Y. 2008) ..................................................................18

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   Civ. No. 15-01257, 2015 U.S. Dist. LEXIS 94181 (N.D. Cal. July 17, 2015)...................9, 10

*Lang v. Ret. Living Pub. Co.*,
   949 F.2d 576 (2d Cir. 1991)...............................................................................16

*LBF Travel v. Fareportal, Inc.*,
   Civ. No. 13 Civ. 9143, 2014 U.S. Dist. LEXIS 156583 (S.D.N.Y. Nov. 5, 2014)......17, 18, 19

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005)................................................................20

*Leonard v. Abbott Labs., Inc.*,
   Civ. No. 10-4676, 2012 U.S. Dist. LEXIS 30608 (E.D.N.Y. Mar. 5, 2012) ..........................11

*Levista, Inc. v. Ranbaxy Pharms., Inc.*,
   Civ. No. 09-0569, 2010 U.S. Dist. LEXIS 11136 (E.D.N.Y. Feb. 4, 2010).....................23, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)....................................................................................13

*Lipton v. Nature Co.*,
   71 F.3d 464 (2d Cir. 1995)...............................................................................10

*McGill v. GMC*,
   231 A.D.2d 449 (1st Dep't 1996) .......................................................................20

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
   938 F.2d 1544 (2d Cir. 1991)..............................................................................6

*Millar v. Ojima*,
   354 F. Supp. 2d 220 (E.D.N.Y. 2005) ................................................................21

*Miller v. Mount Sinai Med. Ctr.*,
   288 A.D.2d 72 (1st Dep't 2001) ........................................................................21

*Nielsen Co. (US), LLC v. Success Sys.*,
   Civ. No. 11-2939, 2015 U.S. Dist. LEXIS 79918 (S.D.N.Y. June 19, 2015).........................22

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
   997 F. Supp. 470 (S.D.N.Y. 1998) ....................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Planet Payment, Inc. v. Nova Info. Sys.*,
  Civ. No. 07-2520, 2011 U.S. Dist. Lexis 49154 (E.D.N.Y. Mar. 31, 2011) ..........................24

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  745 F. Supp. 2d 343 (S.D.N.Y. 2010).....................................................................................17

*Securitron Magnalock Corp. v. Schnabolk*,
  65 F.3d 256 (2d Cir. 1995)......................................................................................................16

*Small v. Lorillard Tobacco Co.*,
  252 A.D.2d 1 (1st Dep't 1998), *aff'd*, 698 N.Y.S.2d 615 (N.Y. 1999) ..................................20

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004).....................................................................................................22

*Steinmetz v. Energy Automation Sys., Inc.*,
  43 Misc. 3d 1210[A], 2014 N.Y. Misc. LEXIS 1600 (N.Y. Sup. Ct. Kings Cty. 2014) .........19

*The Sports Auth., Inc. v. Prime Hospitality Corp.*,
  89 F.3d 955 (2d Cir. 1996).......................................................................................................14

*Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*,
  155 F. Supp. 2d 1 (S.D.N.Y. 2001), *aff'd in part and remanded*, 277 F.3d 253 (2d
  Cir. 2002) .................................................................................................................................14

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*,
  455 F. App'x 102 (2d Cir. 2012) .............................................................................................22

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
  309 F. Supp. 2d 401 (E.D.N.Y. 2004) ...........................................................................10, 19

*White Plains Coat & Apron Co. v. Cintas Corp.*,
  8 N.Y.3d 422 (2007) .............................................................................................................23

*Wright v. Cayan*,
  817 F.2d 999 (2d Cir. 1987)....................................................................................................21

*XYZ Two Way Radio Service, Inc. v. City of New York*,
  No. 5693/15, 2015 N.Y. Misc. LEXIS 3263 (N.Y. Sup. Ct. N.Y. Cty. Sept. 8, 2015) .........1, 7

**STATUTES**

Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ..........................................................................6, 13, 14

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ......................................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Lanham Act, 15 U.S.C. § 1127................................................................................14

New York General Business Law, § 349.......................................................... passim

New York General Business Law, § 350.......................................................... passim

35 R.C.N.Y. § 51-03 ..............................................................................................7

35 R.C.N.Y. § 55-03(u) .........................................................................................4

35 R.C.N.Y. § 55-04(g) .........................................................................................9

35 R.C.N.Y. § 77-20(d)(1)(i)(B)-(D) ....................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)................................................................................2, 6, 16

Defendants Uber Technologies, Inc. ("Uber"), Weiter, LLC, Hinter, LLC, Grun, LLC, Unter, LLC, Schmecken, LLC, and Danach-NY, LLC (together with Uber, "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of Plaintiffs XYZ Two Way Radio Service, Inc. ("XYZ") and Elite Limousine Plus, Inc. ("Elite," and together with XYZ, "Plaintiffs").

## <u>INTRODUCTION</u>

Plaintiffs are traditional "black car" companies that operate in and around New York City. Uber is a technology company that invented a cutting-edge software application, the Uber App, which allows consumers to request transportation quickly and easily from independent, third-party drivers.[1] Uber's revolutionary product has changed the way people move in New York City and around the world, and provides an enormously convenient service for customers frustrated with outmoded ground transportation companies.

In this lawsuit, Plaintiffs purport to state claims against Uber under the Lanham Act and the New York General Business Law ("GBL"), as well as for tortious interference with contract and business relations. At its core, however, Plaintiffs' action is nothing other than an improper attempt to accomplish through litigation what Plaintiffs have been unable to achieve by improving their service or by lobbying—and ultimately suing—the NYC Taxi and Limousine Commission ("TLC") itself: to put Uber out of business in New York.

Plaintiffs' attempt to bully the TLC into banning Uber through litigation has *already* been rejected by New York's state courts. On September 8, 2015, the Hon. Allan Weiss dismissed with prejudice the Article 78 Complaint Plaintiffs filed just one week after starting this lawsuit—using the same counsel, and seeking the exact same relief as here. *See XYZ Two Way Radio*

---

[1]  The six other defendants are bases that facilitate the operation of Uber's platform in New York in compliance with the Taxi and Limousine Commission's ("TLC") regulations.

*Service, Inc. v. City of New York*, No. 5693/15, 2015 N.Y. Misc. LEXIS 3263 (N.Y. Sup. Ct. N.Y. Cty. Sept. 8, 2015).  This Court is not the proper forum for Plaintiffs to seek a *de facto* appeal of the TLC's determinations, which were reviewed and left undisturbed by New York's courts.  Moreover, federal courts have repeatedly denied efforts by car companies to transform local regulatory grievances into claims under the Lanham Act.  *See, e.g.*, *Greenwich Taxi Co., Inc. v. Uber Techs., Inc.*, Civ. No. 14-733, 2015 U.S. Dist. Lexis 106505, at *12 (D. Conn. Aug. 13, 2015).

Plaintiffs' claims also fail under Fed. R. Civ. P. 12(b)(6) because each suffers from multiple pleading deficiencies.

*First*, Plaintiffs' Lanham Act claim for false advertising fails because: (i) the TLC has determined that Uber is *in fact* operating in compliance with local law, so Uber's public statements to that effect cannot constitute false advertising; (ii) background screening in New York City—unlike other jurisdictions—is controlled by the TLC and Plaintiffs' allegations contradict matters of public record, which this court can judicially notice even at the pleading phase; (iii) Uber's statements regarding its safety practices, and its denomination of transportation providers as "driver-partners," are non-actionable "puffery"; and (iv) Plaintiffs have failed to allege how statements made by Uber to customers injured Plaintiffs.

*Second*, Plaintiffs' Lanham Act claim for false affiliation fails because: (i) Plaintiffs fail to allege that they have a valid trademark or other cognizable property interest in the marks "XYZ" and "Elite"; (ii) Plaintiffs fail to allege that Uber *used* Plaintiffs' corporate identities in any way; and (iii) Plaintiffs specifically acknowledge that any purported consumer confusion occurs *after* customers have already requested transportation using the Uber App.

*Third*, Plaintiffs' claims for deceptive conduct under §§ 349 and 350 of the GBL fail because: (i) Plaintiffs lack standing to prosecute a claim under the GBL; and (ii) because the deficiencies applicable to the Lanham Act claims apply equally to the GBL claims.

*Fourth*, Plaintiffs' tortious interference claims fail because: (i) Plaintiffs do not allege that they had employment contracts with drivers for a term-certain, which is a prerequisite to recovery for tortious interference with contract; and (ii) Plaintiffs fail to allege that Uber engaged in conduct that was independently tortious, which is a prerequisite to recovery for tortious interference with business relations.  For these reasons, explained in detail below, the Court should dismiss Plaintiffs' Complaint with prejudice.

## SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT

Plaintiffs' allegations fall into four completely unrelated categories: (1) allegations that the Uber App is an improper E-Hail service; (2) allegations that Uber's statements regarding its safety measures are misleading; (3) allegations that Uber has confused customers into believing that Uber is associated with Plaintiffs; and (4) allegations that Uber interfered with the employment contracts between Plaintiffs and their drivers.

### A.    E-Hail Allegations

Plaintiffs allege that the Uber App allows drivers to book "immediate," as opposed to pre-arranged, transportation (Compl. ¶¶ 31-33), such that the service constitutes an impermissible "E-Hail" under the TLC's regulations.  (Compl. ¶¶ 34-36.)  Plaintiffs entirely omit that the TLC has consistently rejected their contention.  Notably, Plaintiffs have also failed to apprise the Court that their Article 78 proceeding against the TLC has been dismissed.

### B.    Allegations Relating To Uber's Safety Measures

Plaintiffs set forth three categories of allegations related to Uber's public statements about safety.  First, Plaintiffs identify generalized statements on Uber's website to the effect that

Uber is "industry leading," Uber "is committed to connecting you with the safest ride on the road," and Uber "works hard to ensure that [it is] connecting drivers with the safest rides on the road." (Compl. ¶¶ 46-49.)  Plaintiffs' sole concrete allegation concerns the alleged statement by Uber that Uber uses a "background check that leads the industry" and is "often more rigorous than what is required to become a taxi driver."  (Compl. ¶ 47.)  Plaintiffs insist that these statements are misleading because, they claim, drivers who operate on the Uber App are not fingerprinted, checked for dangerous medical conditions or subjected to other tests or procedures that the TLC conducts on Plaintiffs' employees and other black car drivers.  (Compl. ¶¶ 50-62.)  Yet Plaintiffs' allegations contradict, or ignore, matters of public record.  TLC regulations relating to safety and screening apply equally to *all* drivers of For Hire Vehicles ("FHVs"), including both Plaintiffs' employees and Uber's driver-partners.  *See* Pt. I.B. below.

Plaintiffs allege that Uber's use of the term "Driver-Partners" is misleading because those individuals are independent contractors (*i.e.*, rather than "partners").  Plaintiffs allege that Uber's use of the term proximately caused their claimed injury. (Compl. ¶¶ 70-71.)  Although they offer no explanation and point to no consumer injury whatsoever, Plaintiffs also contend that Uber's use of the term "Driver-Partner" endangers public safety.  (Compl. ¶¶ 72-77.)

Finally, Plaintiffs allege that Uber violates TLC regulations and endangers public safety because Driver-Partners on the Uber platform allegedly use mounted cell phones to accept rides. (Compl. ¶¶ 78-87.)  Yet Plaintiffs fail entirely to mention that: (i) the TLC has repeatedly rejected Plaintiffs' insistence that the Uber App is in any way unsafe; (ii) the TLC's regulations explicitly permit "short business-related communication with a Base," as long as "[t]he communication is about a Dispatch," and is made via a device which is mounted in a fixed position and is not hand-held (*see* 35 R.C.N.Y. § 55-03(u)); or (iii) Plaintiffs themselves have

attempted to replicate Uber's App and Plaintiffs' own drivers operate using mobile device-based Apps, which Plaintiffs' drivers access using mobile devices.

### C. Allegations Relating To Plaintiffs' False Association Claim

Plaintiffs allege that their drivers also choose to receive ride requests from the Uber App and that their cars display the decals of both Uber and Plaintiffs.  (Compl. ¶¶ 89-91.)  Plaintiffs allege that customers are confused into believing "Plaintiffs are working with Uber."  (Compl. ¶ 93.)  Plaintiffs fail to acknowledge that customers only see the alleged decals *after* they have already requested and confirmed transportation through the Uber App.  Plaintiffs also fail to allege that they have any trademark or other cognizable interest in the marks "XYZ" and "Elite."

### D. Allegations Regarding "Interference With Contractual Relations"

Finally, Plaintiffs allege that Uber has interfered with the contracts between Plaintiffs and their drivers—by offering those drivers better pay—despite the fact that Plaintiffs' contracts allegedly "prohibit performing services for other companies."  (Compl. ¶¶ 97-100.)  Plaintiffs fail to plead that their driver contracts are for a specified term rather than "at will."

### STANDARD OF REVIEW

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim . . . that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs cannot rely on "bald contentions, unsupported characterizations, and legal conclusions."  *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008) (citation omitted) *affid.*, 347 F. App'x 665 (2d Cir. 2009.)  Further, the court "may consider matters of which judicial notice may be taken without converting a motion to dismiss into one for summary judgment," including public agency rules and regulations.  *In re Frito-Lay N. Am., Inc.*, Civ. No. 12-MD-2413, 2013 U.S.

Dist. LEXIS 123824, *10 (E.D.N.Y. Aug. 29, 2013) (judicial notice of regulation proper in determining motion to dismiss pursuant to Rule 12(b)(6)).

### <u>PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF</u>

In their complaint, Plaintiffs set forth six causes of action: (1) a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) a claim for false association under the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A); (3) a claim for deceptive business practices under § 349 of the GBL; (4) a claim for false advertising under § 350 of the GBL; (5) a common law claim for tortious interference with contractual and business relations.  Each claim fails.

### I.
### <u>Plaintiffs Fail to State a Lanham Act Claim For False Advertising</u>

Plaintiffs purport to state their first Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B), which prohibits "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  Uber is mindful of the Court's admonition during the pre-motion conference that stating a claim for false advertising— as opposed to proving such a claim—is not especially arduous.  Nevertheless, Uber respectfully submits that, for reasons particular to Plaintiffs' history with the TLC, and in view of the prevailing regulatory scheme in New York City, Plaintiffs have failed to state such a claim here.[2]

**A.    Plaintiffs Cannot Premise A Lanham Act Claim**
       **<u>Upon Alleged Violations Of Local Law</u>**

Plaintiffs' attempt to predicate their false advertising claim on the allegation that the Uber App functions as an impermissible "e-hail," in violation of the TLC's regulations, fails as a matter of law.  First, the TLC itself has rejected Plaintiffs' contention.  In fact, the TLC has recently amended its rules to make clear that non-medallion cars can be dispatched through a

---

[2]  To state a claim for false advertising under the Lanham Act, a plaintiff must allege the existence of "advertising [that] is literally false" or that "though literally true, is likely to mislead or confuse consumers."  *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991).

"Dispatch Service," which is "a publicly available, Passenger-facing booking tool," used to "dispatch[], reserve[e], or refer[] trips to Drivers on behalf of TLC licensed Bases."  35 R.C.N.Y. § 51-03 (Definitions).

The flaw in Plaintiffs' claim is demonstrated by the fact that their Article 78 proceeding against the TLC on these identical grounds has been dismissed with prejudice.  *See XYZ Two Way Radio Serv., Inc. v. City of New York*, No. 5693/15, 2015 N.Y. Misc. LEXIS 3263 (N.Y. Sup. Ct. Queens Cty. Sept. 8, 2015).  In the Article 78 case, Plaintiffs—by means of allegations largely cut-and-pasted from the Complaint here—sought an order compelling the TLC to deem Uber in violation of the TLC's rules.  In his dismissal order, Judge Weiss held, "It is not the court's function to adjust the competing political and economic interests disturbed by the introduction of" new technologies.  *Id*.  Likewise, the Court explained that "[a]n agency's interpretation of its own regulations 'is entitled to deference if that interpretation is not irrational or unreasonable," which the TLC's position was not.  *Id*. at *14-15.

Federal courts have also routinely dismissed Lanham Act claims advanced on the basis of Uber's alleged non-compliance with local ordinances.  *See Greenwich Taxi, Inc.*, 2015 U.S. Dist. LEXIS 106505, at *12 (dismissing plaintiffs' Lanham Act claims because they were "based on allegations that the defendant misrepresented to customers that it is complying with Connecticut laws and regulations governing taxicabs and livery vehicles"); *Greater Houston Transp. Co. v. Uber Techs.*, Civ. No. 14-0941, 2015 U.S. Dist. LEXIS 28867, at *26 (S.D. Tex. Mar. 10, 2015) ("Plaintiffs' Lanham Act claims based on Uber's purported red-lining, failure to get properly licensed, and other failures to comply with local ordinances or codes are attempts to use the Lanham Act to enforce Plaintiffs' preferred interpretation of local ordinances"); *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996) ("[E]ntertaining [claims like the plaintiff's]

would be transforming the Lanham Act into a handy device to reach and decide all sorts of local law questions."). These decisions apply squarely to Plaintiffs' allegations in this case and this Court should join the chorus of federal courts across the country that have dismissed these same claims at the pleading stage. Insofar as Plaintiffs' false advertising claim depends on recycling their already rejected "e-hail" contention, it should be dismissed.

### B. Plaintiffs Misstate Facts In The Public Record In Order To Manufacture "Misleading" Statements For Purposes Of Their Lanham Act Claim

To support their deficient false advertising claim, Plaintiffs set forth a litany of statements from Uber's website regarding Uber's safety and screening practices and claim that they are misleading. But Plaintiffs' quotations from Uber's web pages are selective and self-serving, and the Court can consider this fact at this stage.[3] For example, at Paragraphs 51-56 of the Complaint, Plaintiffs detail Uber's alleged use of a company called Hirease, Inc. to conduct background checks for applicants to the Uber platform. At ¶¶ 57-59 of the Complaint, Plaintiffs set forth details concerning the TLC's strict background screening requirements, including among others, drug testing protocols and the use of a fingerprint identification technology called "LiveScan"—but they do so in such a way as to suggest, falsely, that Uber's driver-partners in New York *do not* submit to full TLC screening and are *not* licensed by the TLC. But this is simply untrue, and other portions of Uber's website thoroughly detail the TLC's licensing process in New York City and make absolutely clear that—whatever may be done in cities

---

[3] Knowing that inclusion of these disclosures would undermine their false advertising claim, Plaintiffs simply omit any reference to them in their Complaint. Uber respectfully submits that, in addressing this Motion, the Court can and should consider all of Uber's relevant online disclosures regarding the licensing process for FHV drivers in New York City, as well as the relevant TLC regulations themselves. The law is clear that, in deciding a motion to dismiss, the Court may consider the full text of documents that were quoted in the Complaint, as well as documents that Plaintiffs either possessed or knew about and relied upon in bringing the suit. *See Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion."); *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital I, Inc.*, Civ. No. 11-0505, 2011 U.S. Dist. LEXIS 69168, at *8-9, 25 (S.D.N.Y. June 27, 2011) (The court is entitled to "consider the full text of documents that are quoted in" or "are critical to Plaintiff's complaint.").

outside of New York—all of Uber's driver partners in New York City must be and are licensed by the TLC.  *See, e.g.*, *License Requirements*, Uber, http://www.driveubernyc.com/tlc/ (last visited Oct. 8, 2015) (Berman Decl., Exh. B);  *TLC LICENSE CHECKLIST*, Uber, http://www.driveubernyc.com/tlc-license-checklist  (last visited Oct. 8, 2015) (Berman Decl., Exh. C.); *Rider Safety*, Uber, https://www.uber.com/safety (last visited Oct. 8, 2015) (Berman Decl., Exh. D.).

The simple fact is that all of Uber's driver partners in New York City undergo the same rigorous TLC screening and training process as Plaintiffs' drivers and all other drivers of FHVs, and Plaintiffs should not be permitted to suggest otherwise for the purpose of supporting their meritless false advertising claim.[4]  Like all drivers of FHVs in New York City, drivers who partner with Uber are subject to the TLC's requirements that they: (i) pass an annual drug test; (ii) provide a medical certification form signed by a doctor; and (iii) undergo a criminal background check using LiveScan fingerprint identification technology.  *See* NYC TLC, Driver New Application Checklist Requirements (2015) (Berman Decl., Exh. E.); 35 R.C.N.Y. § 55-04(g).  Simply put, in the context of New York City's regulatory scheme—under which the TLC controls all FHV driver screening and licensing—the claim that Uber's statement of adherence to industry-leading practices is "misleading" fails as a matter of law.[5]

---

[4]  Ironically, one of Plaintiffs' core allegations is that Uber partners with drivers who are already affiliated with Plaintiffs.  (Compl. ¶¶ 28, 100 ("Defendants intentionally seek out, recruit and entice XYZ's drivers to provide services for Defendants.").)  Unless Plaintiffs are alleging that their own drivers are not properly screened, Plaintiffs' contentions would implicate their own drivers.

[5]  This Court would not be the first to determine that a Lanham Act false advertising claim against Uber that purportedly relates to Uber's online statements regarding safety and screening is deficient.  In the *Greenwich Taxi* case, the Court dismissed the plaintiffs' false advertising claim because plaintiffs had failed to allege "that Uber made any representation concerning the safety of its drivers" that was "false or misleading." *See id.* at *19-20.  By stark contrast, in another recent case that partially survived dismissal, *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, Civ. No. 15-01257, 2015 U.S. Dist. LEXIS 94181, at *9 (N.D. Cal. July 17, 2015), the Plaintiffs alleged that "[its] drivers, unlike Uber drivers, are required to take a driver safety course and/or other safety training and to pass a written examination before transporting

C.      **Plaintiffs Cannot Premise Their Claim On Non-Actionable Puffery**

Plaintiffs' claim also fails because the statements Plaintiffs accuse of being misleading fall squarely into the category of "puffery," *i.e.*, aspirational or subjective statements that cannot be proven true or false and are not actionable as a matter of law.  *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) (puffery is "an exaggeration or overstatement expressed in broad, vague, and commendatory language").  For example, Plaintiffs identify the following statements on Uber's website and allege that they are misleading:

- "Wherever you are around the world, Uber *is committed* to connecting you to the safest ride on the road. That means setting the strictest safety standards possible, then *working hard* to improve them every day. The specifics vary depending on what local governments allow, but within each city we operate, *we aim* to go above and beyond local requirements to ensure your comfort and security."  (Compl. ¶¶ 40-41.) (emphases supplied);

- "Uber *works hard* to ensure that we are connecting riders with the safest rides on the road. The current efforts we are undertaking to protect riders, drivers and cities are just the beginning. *We'll continue innovating, refining, and working diligently to ensure we're doing everything we can to make Uber the safest experience on the road.*"  (Compl. ¶ 48.) (emphases supplied); and

- "Drivers not only meet Uber's standards, they meet your standards."  (Compl. ¶ 63.)

On their face, these statements are general and aspirational, not specific and measurable. Other courts have consistently found that almost verbatim formulations are insufficient to support a claim under the Lanham Act.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (It is "well established" that "statements [that] are explicitly aspirational, with qualifiers such as 'aims to,' [and] 'wants to,'" are puffery);

---

passengers," and that its "vehicle safety inspections and maintenance standards are more stringent than those required by Uber."  *Id.*  Based on these explicit allegations, which were not—as here—contrary to the public record, the Court permitted the Lanham Act claim to proceed beyond the dismissal phase. Moreover, even in *L.A. Taxi*, the Court held that certain statements, "such as the claim that Uber is 'GOING THE DISTANCE TO PUT PEOPLE FIRST,' are clearly the type of 'exaggerated advertising' slogans upon which consumers would not reasonably rely." *Id.* at *15.

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1256 (Fed. Cir. 2012) (The phrase "SIMPLY SAFER . . . [is] a general claim of superiority regarding safety of petitioner's syringes and thus amounts to puffery."); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (E.D.N.Y. 2013) (Statements that "Ford is a worldwide leader in automotive safety"; is "designing safety into … cars and trucks"; and Ford is "dedicated" to providing "safer vehicles to [the] consumer" were non-actionable puffery).

This Court's decision in *Leonard v. Abbott Labs., Inc.*, Civ. No. 10-4676, 2012 U.S. Dist. LEXIS 30608, at *1 (E.D.N.Y. Mar. 5, 2012) is instructive.  There, the plaintiffs accused a manufacturer of infant formula of engaging in "deceptive acts and practices" under various consumer protection statutes.  *See id.* at *60-65.  The Court considered several allegedly misleading statements, including that: (i) the manufacturer was "dedicated to the highest standards of manufacturing and marketing — and to complying with all applicable laws and regulations in the countries where [they] do business"; and (ii) the manufacturer was "committed to conducting research to ensure that formula-fed infants receive the highest quality products to meet their nutritional needs." *Id.* at *56-57.  The Court held that these "aspirational statement[s]" were not actionable and were "simply too vague for a reasonable consumer to rely on it in any material way in making a decision to purchase the Defendant's products." *Id.* at *60. The Court also noted that the defendant's "vague[] references [to] a dedication to complying with unspecified standards and all of the laws and  regulations in the countries where it operates" were merely "broadly stated goal[s] to comply with the laws of 130 countries" and as such was "puffery [that] cannot materially mislead a reasonable consumer." *Id.* at *62.  Uber's statements regarding its aspiration to provide the highest level of safety mirror the language in *Leonard* and are likewise not actionable under the Lanham Act.

In the absence of legitimately misleading statements, plaintiffs are left to grasp at straws, alleging that Uber's use of the term "driver-partner"—*i.e.*, to describe third-party transportation providers—is an actionable misrepresentation that inexplicably caused Plaintiffs to lose their customers.  This argument also fails on its face.

Plaintiffs do not explain why it is misleading to describe transportation providers who use Uber's platform as "driver partners."  The word "partner" has a variety of meanings, including "one associated with another especially in an action" Merriam-Webster, http://www.merriam-webster.com/dictionary/partner (last visited Oct. 9, 2015); and "[a] person who takes part with another or others in doing something."  Shorter Oxford English Dictionary on Historical Principles, 2109 (Oxford Univ. Press, 5th ed. 2003).  In view of these definitions, there is nothing inaccurate or misleading about the phrase driver-partners.  In fact, the claim that Uber's use of the term "partner" is misleading has already been addressed and rejected by at least two federal courts.  *See Greater Houston Transp. Co.*, 2015 U.S. Dist. LEXIS 28867, at *30-31 (holding that because there is nothing inherently inconsistent about the terms "partner" and "third-party transportation provider," the plaintiff could not plead a cognizable cause of action that Uber's use of the term "partner" was false or misleading); *accord Greenwich Taxi*, 2015 U.S. Dist. Lexis 106505, at *12.  Moreover, on the face of the Complaint, Plaintiffs acknowledge that Uber specifically identifies its driver partners as independent, third-party providers. (Compl. ¶ 73.)  As a matter of law, where a party explains or discloses the meaning of an ambiguous term there can be no action for false advertising under the Lanham Act.  *See Greater Houston Transp. Co.*, 2015 U.S. Dist. LEXIS 28867, at *29-30 (dismissing Lanham Act claim on ground that plaintiffs had failed to plead that the term "ridesharing" was misleading, where clarifying information such as base fares was made available by Uber).

**D.      Plaintiffs Fail to Plead That Uber's Alleged Misrepresentation
Proximately Caused Their Alleged Injuries**

Finally, Plaintiffs' claim fails because Plaintiffs do not allege that Defendants' purported

misrepresentations proximately caused their injuries, which is a prerequisite to recovery.  *See*

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014) (To state a

claim under the Lanham Act, plaintiff must plead "an injury to a commercial interest in sales or

business reputation proximately caused by the defendant's misrepresentations.").  The Lanham

Act does not support claims where the alleged harm is "derivative of" or "too remote" from the

defendant's alleged conduct.  *Id.* at 1390.

Here, Plaintiffs have not alleged any facts that, if true, would establish that Defendants'

representations were the cause of Plaintiffs' alleged harm.  The crux of Plaintiffs' claimed injury

is that they have lost customers to Uber.  But that injury "might instead have resulted from 'any

number of [other] reasons,'" *Id*. at 1394, including independent market factors, or the ease and

convenience of Uber's service as compared to Plaintiffs' outdated business model.  The closest

Plaintiffs come to alleging proximate cause is in ¶ 122 of the Complaint, where they allege that

"the loss of customers and drivers to Defendants resulting from Defendants' deceptive acts and

practices has caused and will cause Plaintiffs to lose substantial revenue." (Compl. ¶ 122.)  This

purely conclusory assertion is insufficient to plead the proximate cause element of Plaintiffs'

claim.  *See Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, Civ. No. 13-10769, 2014 U.S. Dist.

LEXIS 42063, at *13 (D. Mass. Mar. 27, 2014) (allegation that Plaintiffs were "harmed by lost

revenues due to Uber offering Uber Black Cars and Uber SUVs as an alternative to taxicabs"

was insufficient to plead proximate cause).

## II.
## Plaintiffs Fail To State A Lanham Act Claim For False Association

Plaintiffs also purport to state a claim for false association under the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A).  In support of this claim, Plaintiffs allege that "[w]hen a car with Plaintiffs' service marks and other identifying features arrives at the pick-up location as the Uber assigned black car in response to an Uber customer's request and places a sign bearing Uber's name, logo and colors in its window, consumers are likely to believe Plaintiffs are affiliated or associated with Uber."  (Compl. ¶ 91.)  Plaintiffs' claim fails for three reasons.

### A.    Plaintiffs Fail To Allege They Have Recognizable Trademarks

To state a claim under § 1125(a)(1)(A), Plaintiffs are required to allege they have "a valid mark that is entitled to protection under the Lanham Act." *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996).  Yet the Complaint is devoid of any allegation that either Plaintiff has valid, protectable trademarks in "XYZ" or "Elite."  In the absence of this threshold allegation, the claim for false association must be dismissed. *See Greenwich Taxi, Inc.*, 2015 U.S. Dist. LEXIS 106505, at *23-24 (plaintiffs' "allegations are insufficient to support an inference that the plaintiffs' taxicabs and livery vehicles are associated with any recognizable marks"); *Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*, 155 F. Supp. 2d 1, 21 (S.D.N.Y. 2001), *aff'd in part and remanded*, 277 F.3d 253 (2d Cir. 2002) (dismissing Lanham Act claim because plaintiff lacked valid trademark); *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) (dismissing Lanham Act claim because plaintiff had no commercial interest in trade name).

### B.    Plaintiffs Fail To Allege Uber "Used" Their Marks

Plaintiffs also fail to allege that Uber actively "used" their marks, which separately dooms their claim. *See* 15 U.S.C. § 1125(a)(1)(A) (prohibiting persons from "us[ing] in

commerce any word, term, name, symbol, or device, or any combination thereof"). The Lanham

Act itself expressly defines "use" as "used or displayed *in the sale or advertising* of services."

15 U.S.C. § 1127 (emphasis supplied). Courts interpret the "use in commerce" requirement

strictly. *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 625 (6th Cir. 1996)

(dismissing Lanham Act claim because defendants "did not create the consumers' confusion, but

. . . merely took advantage of confusion already in existence," and because defendants "never

used [plaintiff's] trademark nor any facsimile of" those marks.). In the *Holiday Inns* case, the

Plaintiff owned the vanity phone number "1-800-HOLIDAY." *Id.* Defendant, a travel agent,

registered a similar number, 1-800-H**0**LIDAY (where the **o** is actually a zero), knowing that

customers trying to reach Holiday Inn might misdial, giving them opportunity to win business

initially targeted toward Plaintiff. *Id.* Although the court acknowledged the likelihood of

consumer confusion, it dismissed the Lanham Act false association claim because the defendant

had never actually "used" the plaintiff's mark, "Holiday," in commerce. *Id.*; *accord Flava

Works, Inc. v. Gunter, Inc.,* Civ. No. 10-6517, 2011 U.S. Dist. 50067, at *19-20 (N.D. Ill. May

10, 2011) (dismissing Lanham Act claim where plaintiff accused defendant of displaying its

trademark and trade dress on a website because complaint did not "allege that defendants used

plaintiff's marks at all or that they used the marks in commerce.").

     Here, the entirety of Plaintiffs' pleading with regard to the use component of their false

association claim is that cars driven by some drivers using the Uber App bear decals with

Plaintiffs' corporate names. (Compl. ¶ 91.) But the law is absolutely clear that the simultaneous

existence of both an Uber logo and the Plaintiffs' marks on a for hire vehicle does not constitute

actionable "use in advertising" under the Lanham Act.[6]

---

[6] If the mere coexistence of the marks were enough to state a claim, then Uber would have a reciprocal
claim against Plaintiffs for false association under the Lanham Act.

C.      **Plaintiffs Cannot Premise Their False Association Claim On Alleged Confusion That Occurred *After* The Point-Of-Sale**

Plaintiffs' false association claim also fails because Plaintiffs' own allegations demonstrate that any confusion occurred *after* customers requested and confirmed transportation through the Uber App, *i.e.*, after the point of sale. (*See* Compl. ¶ 32-33.) The Lanham Act protects only against confusion that actually affects "the purchasing … of the goods or services in question." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991); *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 366 (S.D.N.Y. 2014) (Lanham Act "protects only against mistaken purchasing decisions and not against confusion generally."). Not accidentally, Plaintiffs allege only that Uber's actions are "likely to cause confusion" at some unidentified future time, but in doing so, tacitly acknowledge that at the time of requesting a car through the Uber App, there can be no consumer confusion. (Compl. ¶ 88.) Plaintiffs fail entirely to plead that any alleged confusion ever caused a customer to open the Uber App to order transportation—let alone that it caused a customer to order transportation using the Uber App *rather than* calling one of the Plaintiffs.

**III.**

**Plaintiffs Fail To State A Claim Under The GBL**

Plaintiffs' claims under Sections 349 and 350 of the GBL should be dismissed because Plaintiffs lack standing to sue under the statute. Both claims also fail under Fed. R. Civ. P. 12(b)(6).

A.      **Plaintiffs Lack Standing To Bring Claims Under The GBL**

Plaintiffs lack standing to sue under the GBL because, at its essence, Plaintiffs' claim is for injury to their businesses, not injury to the public-at-large. Sections 349 and 350 of the GBL are "at [their] core, a consumer protection device." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). As this court has recognized, parties alleging a business

-16-

injury—and Plaintiffs claim to be competitors of Uber (Compl. ¶ 142 )—are permitted to pursue claims under the GBL only in extremely narrow circumstances, as "an additional enforcement measure" serving the law's primary goal, *i.e.*, preventing "harm to the public at large." *Ivy Mar Co. v. C.R. Seasons, Ltd.*, Civ. No. 95-0508, 1998 U.S. Dist. LEXIS 15902, at *21-22 (E.D.N.Y. Oct. 7, 1998) (Block, J.) (internal citations omitted).

When a business litigant, especially one that purports to be in competition with the defendant, brings a claim under §§ 349 or 350, it is not enough to allege a peripheral injury to the public. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) ("[D]isputes between competitors where the core of the claim is harm to another business as opposed to consumers" are "too insubstantial to satisfy the pleading requirements of § 349."); *LBF Travel v. Fareportal, Inc.*, Civ. No. 13 Civ. 9143, 2014 U.S. Dist. LEXIS 156583, at *31 (S.D.N.Y. Nov. 5, 2014) ("For a competitor to assert a claim under § 349 or § 350, however, the gravamen of the complaint must be consumer injury or harm to the public interest.") (internal quotations omitted).  New York courts "routinely reject" complaints where, as here, the core claim is harm to the plaintiff's business.  *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 548, n. 13 (S.D.N.Y. 2014) (dismissing claims brought under §§ 349 and 350 because plaintiffs failed to "allege[]facts to show that" plaintiff's conduct was sufficiently "consumer-oriented"); *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 355 (S.D.N.Y. 2010) (plaintiffs failed to state a claim under § 349 because the complaint focused on harm to plaintiff's business and "the limited public harm alleged" was "incidental in nature.").

There is no legitimate dispute that Plaintiffs' claims are focused entirely on alleged economic injury to their own businesses and that any allegation of injury to the public-at-large is at best incidental.[7]  In undisguised terms, Plaintiffs allege:

- "Defendants compete unfairly against Plaintiffs and other black car bases[.]" (Compl. ¶ 37.);

- Defendants "have a substantial (and unfair) competitive advantage over black car bases" like Plaintiffs. (Compl. ¶ 38.);

- "Plaintiffs' reputation and good will is damaged" by Uber (Compl. ¶94.);

- Defendants caused "substantial loss of sales and profits, together with irreparable harm to XYZ's customer relationships, reputation and goodwill." (Compl. ¶ 103.)

These textbook allegations of business injuries are precisely *not* the kinds of claims that can be pursued under the GBL.  *See 4 K & D Corp., LLC*, 2 F. Supp. 3d at 548, n. 13 (dismissing claims under §§ 349 and 350 where allegation was that plaintiff lost revenue because of defendant's allegedly deceptive practices and unfair competition); *LBF Travel*, 2014 U.S. Dist. LEXIS 156583, at *35 (dismissing §§ 349 and 350 claims because "crux of [plaintiff's] claims is that defendants' actions 'provide an unfair commercial and financial benefit to Defendants, have caused or threaten to cause injury to Plaintiff's good will and reputation, and unfairly divert customers and revenue from Plaintiff.'").  In fact, numerous courts have specifically held that trademark claims under the Lanham Act fall outside the scope of the GBL.  *See Krasnyi Oktyabr, Inc. v. Trilini Imps.*, 578 F. Supp. 2d 455, 470 (E.D.N.Y. 2008) ("trademark cases are outside the scope of this general consumer protection statute, [because] the public harm that results from

---

[7] In fact, the Complaint is devoid of any allegation of actual injury to consumers or the public.  For example, although Plaintiffs allege that Uber has "[misled] consumers about their safety measures," Plaintiffs do not allege that any consumer has been harmed.  Likewise, Plaintiffs make the generalized and unsupported allegation that "Defendants' entire business model is premised upon conduct that poses a threat to the safety and well-being of New Yorkers."  (Compl. ¶¶ 78, 79).  Again, however, Plaintiffs fail to allege that any consumer has actually been injured.  In fact, taking Plaintiffs at their word, Plaintiffs themselves are the only entities allegedly harmed by Uber.

trademark infringement is too insubstantial to satisfy the pleading requirements of § 349." (internal quotation omitted)); *accord LBF Travel*, 2014 U.S. Dist. LEXIS 156583, at *31 (false association claims cannot be pursued under the GBL).[8]

### B. Plaintiffs' Claims Under §§ 349 and 350 Fail For The Same Reasons As The Lanham Act Claim For False Advertising

Plaintiffs base their GBL claims on the exact same allegedly "false or misleading representations" that underlie their Lanham Act claims.  (Compl. ¶¶ 131, 139, 146, 157.)  Each of the defenses to the Lanham Act claims applies with equal force to Plaintiffs' claims under the GBL.  This Court has explicitly recognized that, "Puffery is not actionable under sections 349 and 350, for much the same reasons that it is not illegal under the Lanham Act."  *Verizon Directories Corp.*, 309 F. Supp. 2d at 405; *Novo Nordisk A/S v. Becton Dickinson & Co.*, 997 F. Supp. 470, 472, n. 1 (S.D.N.Y. 1998) ("The Court's analysis under the New York General Business Law is the same as under the Lanham Act."); *Steinmetz v. Energy Automation Sys., Inc.*, 43 Misc. 3d 1210[A], 1210A, 2014 N.Y. Misc. LEXIS 1600, at *40 (N.Y. Sup. Ct. Kings Cty. 2014) ("statements constituting opinion or puffery are protected against both statutory trade practices and false adverting claims").  The claims under §§ 349 and 350 of the GBL should be dismissed for the same reasons as the Lanham Act claims.

### C. Plaintiffs' § 350 Claim Fails Because Plaintiffs Do Not Allege That They Relied On Any Alleged Misleading Statements By Uber

Plaintiffs' § 350 claim for false advertising also fails for the separate reason that Plaintiffs do not allege that they relied on any misleading statement made by Uber.  "[Section] 350 requires— unlike § 349—that the plaintiff must demonstrate reliance on the allegedly false

---

[8]  To the extent the Court disagrees and believes that Plaintiffs have alleged sufficient injury to the public-at-large, Plaintiffs still lack standing under the derivative injury bar.  *See City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 622 (2009) (dismissing City's claim under § 349 of the GBL to recover taxes because alleged injury was "entirely derivative of injuries that [the City] allege[s] were suffered by misled consumers[.]").

advertising." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 7 (1st Dep't 1998) ("individualized proof of reliance is essential to the cause [ ] of action for false advertising under General Business Law § 350"), *aff'd*, 698 N.Y.S.2d 615 (N.Y. 1999).  Here, Plaintiffs make no attempt to plead that *they* relied on any allegedly misleading advertising by Defendants.  The Complaint lacks even a conclusory allegation to that effect and the GBL § 350 claim must be dismissed.  *See Ackerman v. Coca-Cola Co.*, Civ. No. 09-395, 2013 U.S. Dist. LEXIS 184232, at *9 (E.D.N.Y. July 17, 2013); *McGill v. GMC*, 231 A.D.2d 449, 449 (1st Dep't 1996).

**IV.**
**Plaintiffs Fail To  State A Claim For Tortious Interference With**
**Contract Or Tortious Interference With Business Relations**

The Complaint's fifth cause of action, which is brought only by XYZ, purports to be for "Tortious Interference with Contractual and Business Relations" (Compl. ¶ 32.)  Although Uber cannot be certain, it appears XYZ has conflated two separate causes of action: one for tortious interference with existing contract and a second for tortious interference with prospective business relations.  XYZ has not stated a claim for tortious interference with existing contracts because its contracts with its drivers lack a definite term of employment and are at will, which precludes such a claim under New York law.  XYZ has also failed to state a claim for tortious interference with prospective business relations because XYZ concedes that Uber's so-called "interference" consists solely of offering better compensation to drivers using the Uber platform.

**A.**     **Plaintiffs Fail To State A Claim For Tortious Interference With Contract**

Under established New York law, a contract that lacks a definite term is terminable at will and cannot form the basis for a tortious interference claim.  *See Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 83-84 (E.D.N.Y. 2004); *Brinn v. Syosset Pub. Library*, 61 F. Supp. 3d 247, 257 (E.D.N.Y. 2014).  Where, as here, the complaint alleges interference

with a contract of employment, the employment must be for a definite term.  *See Am. Preferred Prescription, Inc. v. Health Mgmt.*, 252 A.D.2d 414, 417 (1st Dep't 1998).  If the contract is indefinite or is terminable at will, the claim for tortious interference fails. *See Miller v. Mount Sinai Med. Ctr.*, 288 A.D.2d 72, 72 (1st Dep't 2001).  Where, as here, the complaint omits any allegations concerning the duration of the contract, courts presume the employment to be at will and dismiss claims for tortious interference.  *See Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005); *Wright v. Cayan*, 817 F.2d 999, 1002 (2d Cir. 1987).

XYZ fails to plead that its contracts with drivers have a definite term of employment. Accordingly, the alleged contracts are presumed to be at will and XYZ's claim for interference with existing contracts cannot be sustained as a matter of law.

The tortious interference claim must also be dismissed because Plaintiffs fail to identify any specific contract, with any specific employees, with which Uber allegedly interfered.  *See AIM Int'l Trading, LLC v. Valcucine S.p.A.*, Civ. No. 02-1363, 2003 U.S. Dist. LEXIS 8594, at *16 (S.D.N.Y. May 21, 2003) (dismissing tortious interference claim related to contracts with unspecified group of dealers because the complaint failed to allege any specific contracts with identified third parties); *Bose v. Interclick, Inc.*, Civ. No. 10-9183, 2011 U.S. Dist. LEXIS 93663, at *29 (S.D.N.Y. Aug. 17, 2011) (dismissing tortious interference with contract claim where plaintiff claimed generally that it had contracts with various parties, but did not give "facts regarding the terms of the contracts or the specific parties to the contracts").

**B.    The Complaint Fails To State A Claim For Tortious Interference With Business Relations**

In order to state a claim for tortious interference with business relations, XYZ must plead that (1) it had business relations with a third party; (2) Defendants interfered with those business relations; (3) Defendants used dishonest, unfair, or improper means or acted for a wrongful

purpose in interfering with the contract; and (4) Defendants' acts were the proximate cause of an injury to XYZ. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F. App'x 102, 105 (2d Cir. 2012); *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171-72 (2d Cir. 2004); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 133 (2d Cir. 2008).

While XYZ has nakedly alleged that Defendants "interfered with XYZ's business relations with its drivers . . . by means that were dishonest, unfair and improper" (Compl. ¶ 169), such an allegation can only support a claim for tortious interference if the purported conduct actually amounts to "a crime or an independent tort." *Valley Lane*, 455 F. App'x at 106 (citations omitted). This "poses a particularly high hurdle" to asserting a claim for tortious interference. *Nielsen Co. (US), LLC v. Success Sys.*, Civ. No. 11-2939, 2015 U.S. Dist. LEXIS 79918, at *71 (S.D.N.Y. June 19, 2015) (internal quotations omitted).

Here, the gravamen of XYZ's tortious interference claim is that Defendants are "entic[ing]" XYZ's drivers to partner with Uber (Comp. ¶¶ 28, 100, 101). XYZ alleges that this "enticement" was wrongful for three reasons:

- "Driving for Uber is easier and cheaper than driving for traditional providers such as XYZ." (Compl. ¶ 101.);

- "Defendants offer 'surge' pricing and other benefits that are not available to traditional providers such as XYZ, who are bound by and adhere to TLC's rules prohibiting such activities." (Compl. ¶ 101.); and

- Defendants represent that "their services are superior (in terms of quality, safety, and/or other metrics) to those offered by Plaintiffs, when in fact they are not" and Defendants "make material misrepresentations concerning their 'partnership' with Uber drivers." (Compl. ¶ 101.)

None of these allegations can support a claim for tortious interference because they are neither independently tortious nor wrongful.

-22-

New York courts have consistently held that pro-competitive activity—*e.g.*, offering "easier and cheaper" terms, better pricing, and superior benefits—cannot be a basis for a tortious interference claim.  *See, e.g.*, *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 427 (2007) ("[S]oliciting business in the normal course does not constitute inducement of breach of contract"); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 196 (N.Y. 1980) (a defendant's "persuasion and offer of better terms" to third parties does not constitute wrongful means); *Cantor Fitzgerald Assocs., LP v. Tradition N. Am., Inc.*, 299 A.D.2d 204, 204 (1st Dep't 2002) (providing better terms and welcoming interested third parties does not constitute wrongful conduct).[9]

With respect to Plaintiffs' bald allegation that Defendants made "material misrepresentations" to XYZ's drivers, XYZ does not identify any such misrepresentations, let alone allege facts that, if true, would show that the drivers relied on the purported misrepresentations or that they rise to the level of a tort.  In any event, Uber's relationships with its driver partners are defined by contract, the terms of which are publicly available on Uber's website.  Drivers cannot be deceived when they are voluntarily agreeing to fully disclosed contract terms.

XYZ's claim that Defendants acted with a "wrongful purpose" is belied by the allegations of its own Complaint.  New York courts have interpreted "wrongful purpose" to mean interference for "the sole purpose of inflicting intentional harm on plaintiffs." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004); *see also Levista, Inc. v. Ranbaxy Pharms., Inc.*, Civ. No. 09-0569, 2010 U.S. Dist. LEXIS 11136, at *14 (E.D.N.Y. Feb. 4, 2010).  Where a defendant's

---

[9] Plaintiffs' allegation that "surge pricing" is unlawful (Compl. ¶ 110) is clearly wrong. The TLC has recently issued updated rules clarifying that the use of a "price multiplier or variable pricing policy" is entirely permissible so long as providers make certain disclosures. 35 R.C.N.Y. § 77-20(d)(1)(i)(B)-(D).

alleged interference was "intended, at least in part, to advance its own interests," there can be no "wrongful purpose" because defendant "was not acting solely to harm the plaintiff." *Levista*, 2010 U.S. Dist. LEXIS 11136, at *15; *see also Anesthesia Assoc. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*, 59 A.D.3d 473, 477 (2d Dep't 2009).

Stripped of hyperbole, the Complaint alleges nothing more than competitive conduct that is in Uber's economic self-interest:   recruiting existing drivers because it is "easier and cheaper" than providing training, licensing, and vehicles for new drivers. (Compl. ¶¶ 28, 100.)  There is not, nor can there be, any allegation that Uber acted solely to harm Plaintiffs.

Finally, XYZ fails to properly allege that Uber's conduct proximately caused any injury to XYZ.  XYZ's only alleged injury is that it "lost several drivers," either because those drivers no longer wish to work for XYZ or because XYZ fired its own drivers because XYZ could not abide those drivers also partnering with Uber.  To the extent that XYZ's drivers are voluntarily choosing to leave XYZ's employ, XYZ has not alleged that the drivers actually relied on the supposed misrepresentations in making their decision.  Indeed, as noted above, Plaintiffs concede that Uber's relationship with its partner drivers is defined by clear contract terms.  In any event, it is implausible that drivers choose to partner with Uber merely because Uber uses the term "partner"—rather, it is much more plausible that drivers choose to partner with Uber because, as XYZ admits, Uber offers better "pricing and other benefits" than XYZ and "driving for Uber is easier and cheaper than driving for" XYZ. (Compl. ¶ 101.)  Accordingly, XYZ has not alleged the Defendants actually caused the drivers to sever their relationship with XYZ. *Planet Payment, Inc. v. Nova Info. Sys.*, Civ. No. 07-2520, 2011 U.S. Dist. Lexis 49154, at *35 (E.D.N.Y. Mar. 31, 2011) (holding that "[w]here a defendant merely welcomes a proposed breach, there is no liability").

-24-

To the extent XYZ is actually firing its drivers, as Uber suspects, XYZ—rather than Defendants—is the proximate cause of its own injury, and thus cannot support a claim for tortious interference. *Cantor Fitzgerald Assocs., L.P.*, 749 N.Y.S.2d at 249-50 (holding that plaintiff did not satisfy its burden of establishing proximate causation where plaintiff failed to show that defendant induced any of the breaches).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: October 9, 2015

TROUTMAN SANDERS, LLP

Joshua A. Berman
Katherine L. McDaniel

875 Third Avenue
New York, New York 10022
Telephone:  (212) 704-6000
Facsimile:  (212) 704-8370
Joshua.Berman@troutmansanders.com
Katherine.McDaniel@troutmansanders.com
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua A. Berman, hereby certify that on October 9, 2015 this document was electronically served on counsel for all parties.

Joshua A. Berman
NY State Bar Number 3990967
875 Third Avenue
New York, New York 10022
Telephone:  (212) 704-6000
Facsimile:  (212) 704-8370
joshua.berman@troutmansanders.com