UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

XYZ TWO WAY RADIO SERVICE, INC. and   :
ELITE LIMOUSINE PLUS, INC.,   :
   :  Civil Action No.: 1:15-cv-03015-FB-CLP
   Plaintiffs,   :
   :  **Oral Argument Requested**
   - against -   :
   :
UBER TECHNOLOGIES, INC., WEITER, LLC,   :
HINTER, LLC, GRUN, LLC,   :
UNTER, LLC, SCHMECKEN, LLC, and   :
DANACH-NY, LLC,   :
   :
   Defendants.   :

-------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

ARKIN SOLBAKKEN LLP
Lisa C. Solbakken, Esq.
Robert C. Angelillo, Esq.
Deana Davidian, Esq.
750 Lexington Avenue, 25th Floor
New York, New York 10022
Tel:  (212) 333-0200

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. (iii)

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND .................................................................................................. 2

    A.    The Parties ....................................................................................... 2

    B.    Defendants' Misrepresentations Regarding Safety………………………………..2

    C.    Defendants' Misrepresentations Regarding Their Partnership With Drivers…………………………………………………………………………4

    D.    Defendants' Mislead Consumers to Believe That Plaintiffs Are Affiliated With or Otherise Sponsor, Approve of, or Endorse Uber…...………..………..5

    E.    Defendants Tortiously Interfere With the Contractual and Business Relations Between XYZ and its Drivers .................................................... 5

ARGUMENT .................................................................................................... 5

I.    THE COMPLAINT STATES A CLAIM FOR FALSE ADVERTISING UNDER THE LANHAM ACT. ........................................................................................ 6

    A.    The Alleged Misrepresentations Are Not Premised on the Illegality of Uber's Service ........................................................................... 6

    B.    The Complaint Accurately Alleges That Defendants Made False and Misleading Statements About Their Background Checks ..................................... 8

    C.    Defendants' "Puffery" Defense Fails .................................................... 9

    D.    The Complaint Adequately Alleges That Defendants Made False Statements About Their Relationship With Their Driver "Partners" .................. 11

    E.    Defendants' Misrepresentations Caused Plaintiffs' Injuries ................................ 13

II.    THE COMPLAINT STATES A CLAIM FOR MISREPRESENTATION OF ASSOCIATION UNDER THE LANHAM ACT. .......................................................... 14

    A.    Plaintiffs Have Valid Marks That Are Entitled to Protection .............................. 15

    B.    Defendants Used Plaintiffs' Marks in Commerce ................................................ 15

    C.    Defendants' Conduct Is "Likely to Cause Confusion" ........................................ 16

III.   PLAINTIFFS' THIRD AND FOURTH CAUSES OF ACTION STATE CLAIMS
       FOR DECEPTIVE ACTS AND FALSE ADVERTISING UNDER THE GBL. ............ 17

       A.    Plaintiffs Have Standing to Bring GBL Claims ................................................... 18

       B.    The Complaint Adequately Alleges That Consumers Relied Upon
             Defendants' False or Misleading Statements ......................................................... 19

IV.    PLAINTIFFS' FIFTH CAUSE OF ACTION STATES A CLAIM FOR TORTIOUS
       INTERFERENCE WITH CONTRACT AND WITH BUSINESS RELATIONS........... 19

       A.    The Complaint States a Claim for Tortious Interference With Contract ............. 19

             1.    The Complaint Sufficiently Alleges the Underlying
                   Contracts ................................................................................... 20

             2.    The Court Should Decline Defendants' Request For A
                   Finding of Fact Regarding Whether The Contracts At Issue Are
                   "Terminable at Will" .................................................................. 21

       B.    The Complaint States a Claim for Tortious Interference With Business
             Relations .................................................................................... 22

             1.    The Complaint Alleges the Use of Improper or
                   Wrongful Means ....................................................................... 23

             2.    The Complaint Alleges Proximate Cause ................................. 24

       CONCLUSION .................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
    414 F.3d 400 (2d Cir. 2005)...................................................................................... 16

*Ackerman v. Coca-Cola Co*.,
    2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013)...................................... 18

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*,
    2003 U.S. Dist. LEXIS 8594 (S.D.N.Y. May 21, 2003)......................................... 20

*Albert v. Loksen*,
    239 F.3d 256 (2d Cir. 2001)...................................................................................... 22

*Am. Preferred Prescription, Inc. v. Health Mgmt.*,
    252 A.D.2d 414 (1st Dep't 1998) ............................................................................ 21

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 5

*Becoming, Inc. v. Avon Prods.*,
    2001 U.S. Dist. LEXIS 11929 (S.D.N.Y. Aug. 15, 2001)................................. 14, 15

*Bernato v. Arthur J. Gallagher & Co.*,
    2015 U.S. Dist. LEXIS 102674 (S.D.N.Y. Aug. 5, 2015) ...................................... 19

*Bose v. Interclick, Inc.*,
    2011 U.S. Dist. LEXIS 93663, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)....... 20

*Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*,
    2014 U.S. Dist. LEXIS 42063 (D. Mass. Mar. 27, 2014)....................................... 14

*Brill Physical Therapy, P.C. v Leaf*,
    2011 NY Slip Op 33903[U] (Sup. Ct. N.Y. County 2011)...................................... 20

*Brinn v. Syosset Pub. Lib.*,
    61 F. Supp. 3d 247 (E.D.N.Y. 2014) ....................................................................... 21

*Brown v. AXA Re*,
    2004 U.S. Dist. LEXIS 7624 (S.D.N.Y. May 3, 2004)........................................... 22

*Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*,
    299 A.D.2d 204 (1st Dep't 2002) ............................................................................ 24

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ......................................................................... 23

*Cohen v. Davis*,
  926 F. Supp. 399 (S.D.N.Y. 1996) ................................................... 22

*Coliniatis v. Dimas*,
  848 F. Supp. 462 (S.D.N.Y. 1994) ................................................... 22

*Courtenay Commn'cs Corp. v. Hall*,
  334 F.3d 210 (2d Cir. 2003)............................................................. 15

*Dial A Car, Inc. v. Transp., Inc.*,
  82 F.3d 484 (D.C. Cir. 1996) ........................................................ 6, 7

*Diascience Corp. v. Blue Nile, Inc.*,
  2009 U.S. Dist. LEXIS 57385 (S.D.N.Y. July 6, 2009) ...................... 13

*Discover Group, Inc. v. Lexmark Int'l, Inc.*,
  333 F. Supp. 2d 78 (E.D.N.Y. 2004) ................................................ 21

*Enzymotec Ltd. v. NBTY, Inc.*,
  754 F. Supp. 2d 527 (E.D.N.Y. 2010) .............................................. 13

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
  1996 U.S. Dist. LEXIS 18653 (S.D.N.Y. Dec. 16, 1996) ................ 23, 24

*Giles v. Inflatable Store, Inc.*,
  2009 U.S. Dist. LEXIS 28382 (D. Colo. Apr. 6, 2009) ...................... 10

*Gorrill v. Icelandair/Flugleidir*,
  761 F.2d 847 (2d Cir. 1985)......................................................... 21, 22

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
  2015 U.S. Dist. LEXIS 28867 (S.D. Tex. Mar. 10, 2015)............... 7, 8, 9, 11

*Greenwich Taxi Co., Inc. v. Uber Techs., Inc.*,
  2015 U.S. Dist. LEXIS 106505 (D. Conn. Aug. 13, 2015) ............. 7, 8, 11

*Gregory v. Daly*,
  243 F.3d 687 (2d Cir. 2001)............................................................... 5

*Gristede's Foods, Inc. v. Unkechauge Nation*,
  532 F. Supp. 2d 439 (E.D.N.Y. 2007) .............................................. 17

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (1980) ....................................................................... 24

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,
   708 F. Supp. 2d 1209 (D.N.M. 2010) ................................................. 10

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
   86 F.3d 619 (6th Cir. 1996) ................................................. 15, 16

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................. 10

*In re Conn. Mobilecom, Inc.*,
   2003 U.S. Dist. LEXIS 23063 (S.D.N.Y. Dec. 23, 2003) ................................................. 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales, Practices,*
   *& Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................. 10

*Imig, Inc. v. Electrolux Home Care Prods.*,
   2007 U.S. Dist. LEXIS 20530 (E.D.N.Y. Mar. 22, 2007) ................................................. 17

*Jin Zhao v. State Univ. of N.Y.*,
   472 F. Supp. 2d 289 (E.D.N.Y. 2007) ................................................. 22

*Johnson & Johnson v. Carter-Wallace, Inc.*,
   631 F.2d 186 (2d Cir. 1980)................................................. 12, 13, 14

*KatiRoll Co. v Kati Junc., Inc.*,
   33 F. Supp. 3d 359 (S.D.N.Y. 2014)................................................. 16

*Lang v. Retirement Living Publ'g Co.*,
   949 F.2d 576 (2d Cir 1991)................................................. 16

*L.A. Taxi Coop., Inc. v. Uber*,
   2015 U.S. Dist. LEXIS 94181 (N.D. Ca. 2015)................................................. 8, 10

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005)................................................. 18

*Leonard v. Abbott Labs., Inc.*,
   2012 U.S. Dist. LEXIS 30608  (E.D.N.Y. Mar. 5, 2012) ................................................. 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)................................................. 14

*Manzo v. Uber Techs., Inc.*,
   2014 U.S. Dist. LEXIS 95106, (N.D. Ill. July 14, 2014)................................................. 7

*McGill v. GMC*,
   231 A.D.2d 449 (1st Dep't 1996) ................................................. 18

*Medisim Ltd. v. BestMed LLC*,
    910 F. Supp. 2d 591 (S.D.N.Y. 2012) ........................................................................... 18, 19

*Merck Eprova AG v. Gnosis S.P.A.*,
    2011 U.S. Dist. LEXIS 30683 (S.D.N.Y. Mar. 17, 2011) ................................................... 6, 19

*Miller v. Mt. Sinai Med. Ctr.*,
    288 A.D.2d 72 (1st Dep't 2001) ........................................................................................ 21

*Millar v. Ojima*,
    354 F. Supp. 2d 220 (E.D.N.Y. 2005) ............................................................................... 21

*N. State Autobahn, Inc. v. Progressive Ins. Group Co.*,
    102 A.D.3d 5 (2d Dep't 2012) ........................................................................................... 18

*N.Y.S. Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*,
    697 F. Supp. 2d 415 (W.D.N.Y. 2010) .............................................................................. 15

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    32 F.3d 690 (2d Cir 1994) ................................................................................................. 12

*Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*,
    2007 U.S. Dist. LEXIS 3962 (C.D. Ill. Jan. 18, 2007) ...................................................... 21

*Perry v. Int'l Transp. Workers' Fedn.*,
    750 F. Supp. 1189 (S.D.N.Y. 1990) .................................................................................. 16

*PKG Group, LLC v. Gamma Croma, S.p.A*,
    446 F. Supp. 2d 249 (S.D.N.Y. 2006) ................................................................... 22, 23, 24

*PPX Enters., Inc. v. Audiofidelity, Inc.*,
    746 F.2d 120 (2d Cir. 1984) ...................................................................................... 13, 14

*Process Controls Int'l, Inc. v. Emerson Process Mgmt.*,
    753 F. Supp. 2d 912 (E.D. Mo. 2010) .............................................................................. 10

*Rooney v. Tyson*,
    91 N.Y.2d 685 (1998) ................................................................................................. 21, 22

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995) ............................................................................................... 18

*Small v. Lorillard Tobacco Co.*,
    252 A.D.2d 1 (1st Dep't 1998), *aff'd*, 698 N.Y.S.2d 615 (1999) ...................................... 18, 20

*Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship., L.P.*,
    380 F.3d 126 (2d Cir. 2004) .............................................................................................. 13

*Software AG, Inc. v. Consist Software Solutions, Inc.*,
   2008 U.S. Dist. LEXIS 19347 (S.D.N.Y. Feb. 21, 2008) ......................................................... 9

*Sports Auth., Inc. v. Prime Hospitality Corp.*,
   89 F.3d 955 (2d Cir. 1996) ............................................................................................................... 14

*Star Child II, LLC v. Lanmar Aviation, Inc.*,
   2013 U.S. Dist. LEXIS 36476 (D. Conn. Mar. 16, 2013) ....................................................... 10

*Sullivan v. Brodsky*,
   2009 U.S. Dist. LEXIS 72564 (S.D.N.Y. Aug. 17, 2009) ....................................................... 22

*Sweet v. Sheahan*,
   235 F.3d 80 (2d Cir. 2000) ................................................................................................................ 5

*Transaero, Inc. v. Chappell*,
   2014 U.S. Dist. LEXIS 62635 (E.D.N.Y. May 6, 2014) ............................................. 23, 24, 25

*Verizon Directories Corp. v. Yellow Book U.S., Inc.*,
   309 F Supp. 2d 401 (E.D.N.Y. 2004) .......................................................................................... 17

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
   8 N.Y.3d 422 (2007) ......................................................................................................................... 24

*Woolcott v. Baratta*,
   2014 U.S. Dist. LEXIS 63043 (E.D.N.Y. May 7, 2014) ........................................................... 9

*Wright v. Cayan*,
   817 F.2d 999 (2d Cir. 1987) ............................................................................................................ 21

*X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*,
   155 F. Supp. 2d 577 (E.D. Va 2001) ............................................................................................ 10

*Yellow Group LLC v. Uber Techs. Inc.*,
   2014 U.S. Dist. LEXIS 94093 (N.D. Ill. July 10, 2014) ................................................ passim

## **Other Authorities**

15 U.S.C. § 1125 ................................................................................................................................. 15, 16

15 U.S.C. § 1127 ...................................................................................................................................... 15

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

Defendants' memorandum of law consistently misstates both the allegations of the Complaint and applicable law.  As discussed below, Plaintiffs more than adequately plead their claims, and the motion should be denied.

*First*, Defendants erroneously claim Plaintiffs' false advertising claim under the Lanham Act is based on the "illegality" of Uber's service.  In fact, Plaintiffs very clearly allege Defendants have made specific and measurable misrepresentations of fact that deceive consumers, including, but not limited to, misrepresentations concerning their safety measures, their relationship with their insured driver "partners," and the affiliation with or approval of Defendants by Plaintiffs.  Such allegations – which have nothing whatsoever to do with the purported legality of Uber's service – amply support a false advertising claim.

*Second*, Defendants wrongly contend that the Lanham Act protects only against consumer confusion actually affecting purchases of goods or services.  The statute and case law are clear:  Plaintiffs need only allege that Defendants' conduct is "***likely to cause confusion***" as to the affiliation with or approval of Defendants by Plaintiffs.  The Complaint does this.  *See, e.g.*, Compl. ¶¶ 88, 91, 158.  Defendants' effort to dismiss Plaintiffs' Lanham Act claim sounding in misrepresentation of association should therefore fail.

*Third*, Defendants incorrectly argue that Plaintiffs do not have standing to assert New York General Business Law ("GBL") claims.  The Complaint specifically alleges that Defendants' deceptive acts and practices have a broad impact on the public at large, and that Plaintiffs are competitors who suffered injury as a result.  Courts have routinely recognized that

nothing further is required to invoke the GBL.

*Finally*, the Complaint adequately pleads the elements of tortious interference with contractual and business relations claims, which is the question presented on a motion to dismiss. The Court should decline Defendants' request for a finding of fact regarding whether XYZ's contracts with its drivers are "terminable at will."  Even if these contracts *were* deemed to be terminable at will (which they are not), the law is clear that even at-will contracts may give rise to tortious interference claims.

For all these reasons and those set forth below, Defendants' motion should be denied.

## BACKGROUND

### A.     The Parties

Plaintiffs operate black cars in New York City and neighboring communities.  *See* Compl. ¶¶ 7, 9.  Defendants operate black cars in the same areas using a mobile phone application, which enables drivers to pick up passengers via electronic hails.  *Id.* ¶¶ 11, 30, 36.

### B.     Defendants' Misrepresentations Regarding Safety

Defendants' business model depends upon conveying to consumers that it is safe to ride with Uber.  *See id.* ¶ 39.  For example, Uber's website boasts:  "Wherever you are around the world, Uber is committed to connecting you to ***the safest ride on the road***.  That means setting ***the strictest safety standards possible***, then working hard to improve them every day."  *Id.* ¶¶ 40-41 (emphasis added).  Uber's Head of Global Safety represents:  "[W]e have built ***the safest transportation option in 260 cities around the world***." *Id.* ¶ 43 (emphasis added).  Uber's Head of Communications further states:

> Uber works hard to ensure that we are connecting riders with ***the safest rides on the road*** . . . [W]e're doing everything we can to make Uber ***the safest experience on the road***.

*Id.* ¶ 48 (emphasis added); *see also id.* ¶ 70 (Uber is a "safer alternative to taxis.").

2

Uber's advertising campaign emphasizes the rigor of its background checks for drivers. The website promises, "BACKGROUND CHECKS YOU CAN TRUST," explaining that "[e]very ridesharing and livery driver is ***thoroughly screened through a rigorous process we've developed using industry-leading standards.*** This includes a three-step criminal background screening for the U.S. – with county, federal and multi-state checks that go back as far as the law allows – and ongoing reviews of drivers' motor vehicle records throughout their time on Uber." *Id.* ¶ 46 (emphasis added). While in November 2014, Defendants changed the words "industry-leading" to "constantly improving," Uber's Head of Communications nevertheless represented:

> All Uber [drivers] must go through ***a rigorous background check*** . . . ***Our process*** includes prospective and regular checks of drivers' motor vehicle records to ensure ongoing safe driving. Unlike the taxi industry, our background checking process and standards are consistent across the United States and ***often more rigorous than what is required to become a taxi driver.***

*Id.* ¶ 47 (emphasis added). Defendants further claim: "***[O]ur responsibility is to leverage every smart tool at our disposal to set the highest standard in safety we can. We will not shy away from this task.***" *Id.* ¶ 49 (emphasis added).

Yet despite the foregoing, Uber's actual commitment to safety – as confirmed in its terms of use and as Defendants argued in federal courts across the country – is that ***customer safety is not Uber's responsibility and it is not Uber's problem.*** In order to sign up with Uber, all customers must "click through" (and thus accept) the following terms:

> UBER'S SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION . . . WITH **THIRD PARTY PROVIDERS**, **BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION OR LOGISTICS PROVIDED TO YOU BY THIRD PARTY PROVIDERS THROUGH THE USE OF THE SERVICES OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS**.

> . . . BY USING THE SERVICES, **YOU ACKNOWLEDGE THAT YOU MAY BE EXPOSED TO SITUATIONS INVOLVING THIRD PARTY PROVIDERS THAT ARE POTENTIALLY UNSAFE, OFFENSIVE, HARMFUL TO MINORS, OR**

3

**OTHERWISE OBJECTIONABLE . . . .**

*Id.* ¶ 73 (emphasis added).

The grave contrast between the reality of Uber's lack of commitment and responsibility for safety on the one hand and its public statements is self-evident.  The Complaint further provides any number of examples as to how and why these are specific and measureable.  For example, Plaintiffs' drivers must undergo a fingerprint based background check using Live Scan, which is far superior to the background checks employed by Defendants.  *See id.* ¶¶ 51-53, 57-60.  Moreover, unlike Plaintiffs, Defendants do not test for drugs or other medical conditions that could impair a driver's ability to drive.  *See id.* ¶¶ 51, 57; *see also id.* ¶¶ 57-60, 63, 65.

**C.**     **Defendants Misrepresentations Regarding Their Partnership with Drivers**

Defendants next claim their drivers are "partners," that Defendants "have their backs," and that Uber rides are provided by "insured partners and drivers."  *Id.* ¶¶ 70-71.  Defendants further assure consumers that their drivers "not only meet Uber's standards, they meet your standards," "Uber regularly reviews" feedback to "correct for issues big and small," and Uber will "deactivat[e] a partner from the system" for poor performance.  *Id.* ¶¶ 63, 65.

Once again, as the Complaint alleges, these representations are false and misleading.  In an effort to avoid a finding that Uber's drivers are employees as opposed to independent contractors, Uber has argued in federal courts across the country that:  (i) it does not train, supervise, or evaluate its drivers; (ii) it has very limited contact with, and no control over, them; (iii) its rules for drivers are "suggestions," it takes no steps to determine whether drivers accept or reject them, and drivers can accept or reject them without repercussion; and (iv) drivers' accounts "are *not* deactivated for failure to comply with any particular suggestions or any particular instance of reported low-quality service."  *See id.* ¶¶ 64, 69.  Indeed, Defendants disclaim virtually all responsibility for their drivers – including any acts or omissions that are

"***unsafe, offensive, harmful to minors, or otherwise objectionable.***" *See id.* ¶¶ 70-77.

### D. Defendants Mislead Consumers to Believe That Plaintiffs Are Affiliated With or Otherwise Sponsor, Approve of, or Endorse Uber

In addition to hiring their own drivers, Defendants also recruit drivers who are already affiliated with Plaintiffs and other ground transportation companies. *Id.* ¶ 18. These drivers make a side deal with Defendants to drive their customers while they are ostensibly servicing the ground transportation companies with which they are otherwise affiliated. *Id.* ¶ 29.

When a car with Plaintiffs' service marks and other identifying features arrives at the pick-up location as the Uber-assigned car and a sign bearing Uber's name, logo, and colors, consumers are likely to believe Plaintiffs are affiliated or associated with Uber and/or that Plaintiffs sponsor or partner with Uber. *See id.* ¶ 91. To add to the confusion, Defendants repeatedly refer to their drivers as "partners" on their website and in marketing materials. *See id.* ¶¶ 28-29, 89-92.

### E. Defendants Tortiously Interfere With the Contractual and Business Relations Between XYZ and its Drivers

Finally, Defendants intentionally induce XYZ's drivers to breach their contracts with XYZ by: (i) accepting Uber hails even as they purport to drive for XYZ; and (ii) requiring them to violate applicable rules and regulations when driving for Uber. *See id.* ¶¶ 96-113.

## ARGUMENT

To be sustained on a motion to dismiss, a complaint need only provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). "Dismissal is inappropriate unless it appears beyond doubt that the

plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## I.   THE COMPLAINT STATES A CLAIM FOR FALSE ADVERTISING UNDER THE LANHAM ACT.

To state a claim for false advertising under the Lanham Act, a plaintiff must allege: (i) an advertisement is literally false or, although literally true, is likely to deceive or confuse customers; (ii) the statement concerns "an inherent quality or characteristic of the product"; (iii) the defendant placed the statement in interstate commerce; and (iv) "the plaintiff has been . . . injured as a result," such as "by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis s.p.A.,* 760 F.3d 247, 255 (2d Cir. 2014).

Here, Defendants do not claim that the Complaint fails to allege the first three elements. Instead, Defendants argue that: (i) the essence of Plaintiffs' claim is that Uber operates illegally; (ii) Plaintiffs "misstate facts in the public record" with respect to Uber's background checks; (iii) the safety representations at issue are non-actionable "puffery"; and (iv) Uber's use of the term "partner" is consistent with "third party transportation provider."  The only element that Defendants claim is lacking is proximate cause of damages.  Each of these arguments fails.

### A.   The Alleged Misrepresentations Are Not Premised on the Illegality of Uber's Service

Defendants distort Plaintiffs' Lanham Act claim in an effort to shoehorn this case into the analysis of *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996), which is not binding on this Court.  *See* Defs. Br. at 9 (claiming *Dial A Car* "appl[ies] squarely to Plaintiffs' allegations in this case").  However, the reference to *Dial A Car* is completely misplaced.[1]

---

[1]      Defendants' repeated reference to Plaintiffs' wholly separate Article 78 proceeding against different parties makes clear that the illegality of Uber's service is the subject of a separate case – not this case.  In the Article 78 proceeding, Plaintiffs sought a judgment declaring that TLC's decision to allow Uber black cars to accept e-hails while enforcing its e-hail rules against similarly situated black car bases is arbitrary and capricious.  Although the Article 78 proceeding was dismissed on the grounds that TLC's decision to treat Uber's app as a type of pre-

6

In *Dial A Car*, a car service company alleged that two taxi companies violated the Lanham Act by falsely representing that their services were legal – when, in plaintiff's view, defendants were in violation of a regulation issued by the D.C. Taxicab Commission. *Id.* at 485-86.  The court concluded that whether the statements at issue were false hinged on the Commission's interpretation of such regulation, and that plaintiff was "using the Lanham Act to try to enforce its preferred interpretation of [the regulation] instead of adjudicating the issue before the Commission." *Id.* at 488-89.

Because *Dial A Car* centered on efforts to use the Lanham Act as a means to enforce local regulations, it has no application here.  Indeed, as discussed in detail above, Plaintiffs allege that Defendants disseminate misrepresentations concerning their safety measures (Compl. ¶¶ 39-69, 78-87, 146), their relationship with drivers (*id.* ¶¶ 70-77, 146), and the affiliation with or approval of Defendants by Plaintiffs (*see id.* ¶¶ 88-93, 146).  The Complaint does not ask this Court to interpret or construe TLC rules and regulations (or hinge on any such determination by TLC), nor does it ask this Court to make a finding that Defendants violated any such rule or regulation.  Thus, *Dial A Car* is inapposite here.

Numerous courts across the country have rejected Uber's reliance on *Dial A Car* for exactly this reason – where (as here) the misstatements at issue are "not premised on the illegality of Uber's service and will not require the Court to interpret local taxi or livery regulations." *Manzo v. Uber Techs., Inc.*, 2014 U.S. Dist. LEXIS 95106, at *16 (N.D. Ill. July 14, 2014); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 28867, at *22-37 (S.D. Tex. Mar. 10, 2015) (*Dial A Car* bars only Lanham Act claims premised on Uber's alleged non-compliance with local ordinances, not safety misrepresentations); *Yellow Group*

arrangement rather than a hail involved an exercise of discretion or judgment, the issue of the illegality of Uber's service is very much an open question in a motion to reargue a companion case and in another pending case.  *See CGS Taxi LLC, et al. v. The City of New York, et al.*, Index No. 653264/2015 (Sup. Ct. New York County).

7

*LLC v. Uber Techs. Inc.*, 2014 U.S. Dist. LEXIS 94093, at *25-26 (N.D. Ill. July 10, 2014) (*Dial A Car* does not bar claims based on misrepresentations "separate and apart from the legality of Uber's service").  Accordingly, *Dial A Car* provides no basis to dismiss Plaintiffs' claim.[2]

**B.**    **The Complaint Accurately Alleges That Defendants Made False and Misleading Statements About Their Background Checks**

Defendants' claim that Plaintiffs' "misstate facts in the public record" with respect to Uber's background checks fares no better.  Defs. Br. at 8.  In particular, Defendants claim that "all of Uber's driver partners in New York City must be and are licensed by the TLC," and therefore undergo "the same rigorous TLC screening and training process as Plaintiffs' drivers and all other drivers of [for-hire vehicles]."  *Id.* at 9.

This allegation is demonstrably false.  Indeed, as alleged in the Complaint, Uber's website claims that only "UberBLACK, Uber SUV, [and] uberTAXI rides are provided by commercially licensed and insured partners and drivers."  Compl. ¶ 71.  However, Uber offers a fourth option in New York City:  UberX, which is a lower cost service.  *See* Affirmation of Robert C. Angelillo dated November 13, 2015 ("Angelillo Aff."), Ex. 1.  UberX drivers transport passengers in their personal vehicles, ***without commercial licenses***.  *See* Davidian Aff., Exs. B & C; *Yellow Group LLC*, 2014 U.S. Dist. LEXIS 94093, at *4 n.4.  Uber's website further confirms that you can register to be an UberX driver – with "[n]o special drivers license" – in neighboring states, and drive in New York.  *See* Angelillo Aff., Exs. 2 & 3.  Thus, Defendants' argument that "all of Uber's driver partners in New York City must be and are licensed by the TLC" is wrong.

In all events, for purposes of this motion, the Court must accept as true the Complaint's

---

[2]    Because the misrepresentations at issue here are not based on Uber's compliance with local ordinances (and do not require the Court to interpret any rules or regulations), Defendants' other cases are equally unavailing.  *See* Defs. Br. at 7 (citing cases).  Those decisions, following the reasoning of *Dial A Car*, dismissed Lanham Act claims because the statements at issue were – *unlike in this case* – based on Uber's representations regarding its compliance with local ordinances.  *See Greenwich Taxi Co., Inc. v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 106505, at *12 (D. Conn. Aug. 13, 2015); *Greater Houston Transp. Co*., 2015 U.S. Dist. LEXIS 28867, at *26.

well-supported allegations that Uber's background checks are inferior to Plaintiffs.  *See, e.g.,*

*L.A. Taxi Coop., Inc. v. Uber*, 2015 U.S. Dist. LEXIS 94181, at *2, 8 (N.D. Ca. 2015) (accepting

as true for purposes of Uber's motion to dismiss plaintiffs' allegation that Uber "is not

employing the most effective background checks available").  At best, Defendants' argument

raises issues of fact that cannot be resolved on a motion to dismiss and will be fully vetted in

discovery.  *See Woolcott v. Baratta*, 2014 U.S. Dist. LEXIS 63043, at *17 (E.D.N.Y. May 7,

2014) (denying motion to dismiss because "it presents a factual dispute that is not appropriately

decided at the dismissal stage" (quotation marks omitted)).

C.   **Defendants' "Puffery" Defense Fails**

Equally infirm is Defendants' claim that the challenged safety representations are non-

actionable "puffery."  *See* Defs. Br. at 10-12.  "Puffery" is defined as a statement that is "not

capable of objective verification" and "exaggerated, blustering, and boasting," such that no

reasonable customer would rely on same.  *Software AG, Inc. v. Consist Software Solutions, Inc.*,

2008 U.S. Dist. LEXIS 19347, at *36 (S.D.N.Y. Feb. 21, 2008).  Specifically excepted from this

definition, however, are "***statements as to the comparative safety of a product.***"  *Greater*

*Houston Transp. Co.*, 2015 U.S. Dist. LEXIS 28867, at *32 (emphasis added).  These are

"specific and measurable," and thus fall outside the purview of "puffery."  *Id.*

Specific and measurable misrepresentations of fact are precisely what are at issue in the

Complaint.  For example, Defendants claim, among other things, that: (i) Uber is "setting the

strictest safety standards possible"; (ii) every driver is "thoroughly screened through a rigorous

process"; (iii) its "three-step screening" background check procedure includes "county, federal

and multi-state checks"; (iv) its background check process is "industry-leading" and "often more

rigorous than what is required to become a taxi driver"; (v) Uber "leverage[s] every smart tool at

[its] disposal to set the highest standard in safety [they] can"; and (vi) Uber is a "safer alternative

to taxis" and the "safest transportation option" for consumers.  *See* Compl. ¶¶ 40, 41, 43, 46-49, 51, 62, 70.  Thus, Defendants explicitly compare the safety of their services with those offered by Plaintiffs and other ground transportation companies.  *See id.*  Of course, these statements are particularly ironic given Uber's arguments in federal courts to the contrary and the complete abdication of responsibility for customer safety belied by the terms of service quoted above.

In any event, a reasonable consumer reading these statements inevitably concludes an Uber ride is objectively and measurably safer than a ride provided by Plaintiffs and other ground transportation companies.  Such allegations – which must be construed as true on a motion to dismiss – amply support a claim.  *See, e.g., Star Child II, LLC v. Lanmar Aviation, Inc.*, 2013 U.S. Dist. LEXIS 36476, at *4 (D. Conn. Mar. 16, 2013) (statement that defendant "had implemented the most stringent safety standards is outside the ken of mere puffery" because it "is a statement of fact"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 375 (E.D.N.Y. 2010) (allegations that defendant "misrepresented the safety" of its products was a "traditional claim of consumer misrepresentation").[3]

Indeed, virtually identical allegations have been sustained by at least one court in similar actions against Uber.  In *L.A. Taxi Coop., Inc. v. Uber*, 2015 U.S. Dist. LEXIS 94181 (N.D. Ca.

---

[3]       Numerous cases are in accord.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales, Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010) ("[T]he allegations about product safety are more than 'mere puffery' that Toyota's cars were superior to others. They constitute a campaign by Toyota in which it represented itself as prioritizing (even 'obsessing over') safety."); *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 930 (E.D. Mo. 2010) (representations of relative safety are "capable of being proved false" and are thus not mere puffery); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1244 (D.N.M. 2010) ("The Court finds that the bulk of these statements – 'safer,' 'more efficiently,' 'easier,' 'quicker' – are objectively verifiable and that a reasonable consumer might believe that the seller had engaged in some sort of testing before making these statements.  They are therefore not puffing."); *Giles v. Inflatable Store, Inc.*, 2009 U.S. Dist. LEXIS 28382, at *11 (D. Colo. Apr. 6, 2009) ("A reasonable jury could determine that the word 'safest' has a specific, quantifiable meaning: . . . most likely (among all competing products) to keep participants from harm."); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005) (the phrase "most stringent quality control tests" is "a specific factual assertion which could be established or disproved through discovery, and hence is not mere puffery"); *X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 628 (E.D. Va 2001) (holding that referring to a product as "safe" is objectively verifiable and therefore not puffing).

2015), plaintiffs asserted a Lanham Act false advertising claim.  There, the court considered

similar safety representations by Uber.  *See id.* at *15, 19.  Uber moved to dismiss such claim on

the grounds that its statements were non-actionable puffery.  *Id.* at *13.

The court rejected Uber's argument.  *Id.* at *14-15.  The court found these statements to

be "specific assertions that seem to describe absolute characteristics of Uber's services that could

be tested," and that they "explicitly compare the safety of [Uber's] services with those offered by

taxi cab companies."  *Id.*  It further determined that "[a] reasonable consumer reading these

statements in the context of Uber's advertising campaign could conclude that an Uber ride is

objectively and measurably safer than a ride provided by a taxi or other competitor service, i.e., it

is statistically most likely to keep riders from harm."  *Id.*  Finally, the court concluded that

Uber's "aspirational" statements that they are committed to improving "best in class safety" are

"plausibly measurable factual claims."  *See id.* at *19-20.  The same result follows here.[4]

## D.   The Complaint Adequately Alleges That Defendants Made False Statements About Their Relationship With Their Driver "Partners"

Defendants' argument concerning driver "partners" is another mischaracterization of the

allegations in the Complaint.  Contrary to Defendants' contentions, Plaintiffs do not allege

Defendants' use of the term "partner" is false or misleading merely because its drivers are "third-

party transportation providers."[5]  Defs. Br. at 12.

Instead, Plaintiffs allege that Defendants' representations that their drivers are "partners,"

---

[4]      Defendants' case law is inapposite (Defs. Br. at 11) – as these cases did not involve specific assertions of fact that are capable of objective verification, and upon which a reasonable customer would rely.  *See, e.g.*, *Leonard v. Abbott Labs., Inc.*, 2012 U.S. Dist. LEXIS 30608, at *59 (E.D.N.Y. Mar. 5, 2012) (finding that "the majority of the statements cited by the Plaintiffs in support of their claims either have nothing to do with the safety of Similac, or are too vague to mislead a reasonable consumer").

[5]      Defendants' cases are therefore inapposite.  *See* Defs. Br. at 12 (citing cases).  In both of these cases, plaintiffs claimed that Uber misrepresents that its drivers are "partners" when, in reality, they are "third party transportation providers."  *Greater Houston Transp. Co.*, 2015 U.S. Dist. LEXIS 28867, at *31-32; *Greenwich Taxi*, 2015 U.S. Dist. LEXIS 106505, at *14-15.  The courts dismissed plaintiffs' claims because (among other reasons) they could not establish that the terms "partner" and "third party transportation provider" are inconsistent.  *See id.*  These cases therefore provide no basis to dismiss Plaintiffs' false advertising claim.

that Defendants "have their backs," and that Uber rides are provided by "insured partners and drivers" are false and misleading because, in reality, ***Defendants have little contact with their drivers, no control over them, and disclaim all responsibility for their activity.*** *Id.* ¶¶ 70-77, 146.  Plaintiffs further allege that Defendants misrepresent that: (i) their driver partners "not only meet Uber's standards, they meet your standards"; (ii) "Uber regularly reviews" feedback from customers to "correct for issues big and small"; and (iii) they will "deactivat[e]" any driver who falls below a certain rating.  *Id.* ¶¶ 63, 65.  In reality, Uber concedes: (i) it does not train its driver "partners" or require that they follow any rules; (ii) it has very limited contact with, and no control over, its drivers; and (iii) drivers are "are *not* deactivated for failure to comply with any particular suggestions or any particular instance of reported low-quality service."  *Id.* ¶¶ 64, 69.

Finally, Defendants' quotation of the dictionary definition of "partner" in the non-business context is unavailing.  Other definitions of "partner" and "partnership" stress the close relationship between two partners, and the joint responsibility for the actions of a partner.  *See, e.g.*, Merriam-Webster, http://www.merriam-webster.com/dictionary/partnership (the definitions of "partnership" include "two or more persons contractually associated as joint principals in a business," and a "close cooperation between parties having specified and joint rights and responsibilities"); The Law Dictionary, http://thelawdictionary.org/partnership/ ("partnership" is defined as a "voluntary contract between two or more competent persons . . . with the understanding that there shall be a proportional sharing of the profits and losses between them").

Neither is present here.  Indeed, a reasonable consumer reading Defendants' statements is inevitably deceived with respect to Defendants' relationship with their driver "partners", their control over them, and the steps they take to weed out unsuitable drivers.  Such allegations – which must be accepted as true on a motion to dismiss – amply support a claim.

**E.**     **Defendants' Misrepresentations Caused Plaintiffs' Injuries**

Finally, the Complaint alleges a causal connection between Defendants' false advertising and Plaintiffs' injury.  The Second Circuit "has adopted a flexible approach toward the showing a Lanham Act plaintiff must make on the injury and causation component of its claim."  *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir 1994).  A plaintiff is not required to present "proof of actual loss and specific evidence of causation"; instead, a plaintiff need only establish "a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising."  *Johnson & Johnson v. Carter-Wallace, Inc*., 631 F.2d 186, 190 (2d Cir. 1980); *see also Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527 (E.D.N.Y. 2010) (courts "have viewed competition as a strong indication of why the plaintiff has a reasonable basis for believing that its interest will be damaged by the alleged false advertising").  Finally, "[c]ourts seldom dismiss Lanham Act claims without first permitting plaintiffs to conduct discovery and present evidence of competitive harm."  *Diascience Corp. v. Blue Nile, Inc.*, 2009 U.S. Dist. LEXIS 57385, at *10 (S.D.N.Y. July 6, 2009).

Here, the Complaint adequately alleges that Plaintiffs are competitors who suffered injury as a result of Defendants' misrepresentations.  First, Defendants' misrepresentations convince customers and drivers that Defendants' services are safer than those offers by Plaintiffs.  *See* Compl. ¶¶ 39-87, 101, 121.  As a result, customers and drivers choose to use Uber rather than Plaintiffs' services, causing Plaintiffs to lose significant revenue and suffer irreparable harm to their customer relationships, reputation and goodwill.  *See id.* ¶¶ 122, 125.

Second, Defendants promote the false impression to consumers that, when Plaintiffs' vehicles respond to an Uber dispatch call, Plaintiffs are working with Uber.  *See id.* ¶ 93.  In doing so, Defendants benefit from the reputation and goodwill associated with Plaintiffs, while simultaneously damaging that reputation and good will.  *See id.* ¶ 94.  Indeed, consumers are

likely to associate Plaintiffs and their marks with Uber in a manner that detracts from the safety, reliability, and assurances offered when a customer arranges a pick-up through Plaintiffs. *See id.* These allegations amply support a claim. *See, e.g., Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship., L.P.*, 380 F.3d 126, 130 (2d Cir. 2004) (defendant "created a false affiliation between [plaintiff and defendant] and benefited from the good will associated with [plaintiff]," and therefore plaintiff demonstrated "a reasonable basis for asserting that this conduct might cause it commercial injury under the Lanham Act"); *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir. 1984) (plaintiff loses potential profits from each sale of defendant's falsely advertised, diverted products, and thus has a recognizable injury and causal nexus); *Johnson & Johnson*, 631 F.2d at 190 (finding a causal connection between defendant's false advertising and plaintiff's injury in the form of loss of sales).[6]

## II.   THE COMPLAINT STATES A CLAIM FOR MISREPRESENTATION OF ASSOCIATION UNDER THE LANHAM ACT.

To state a claim for misrepresentation of association under the Lanham Act, a plaintiff must show:  (i) "it has a valid mark that is entitled to protection under the Lanham Act"; and (ii) defendant's actions "are likely to cause confusion" as to the affiliation with or approval of the

---

[6]    Defendants' cited cases are not to the contrary. *See* Defs. Br. at 13 (citing cases). For example, in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Supreme Court held that a Lanham Act plaintiff "ordinarily must show economic or reputational injury," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391. If a plaintiff's injuries include an intervening link of injury to *a fellow commercial actor*, they "might not support standing" because the injury "might instead have resulted from any number of [other] reasons." *Id.* at 1394 (emphasis added). But because "all commercial injuries from false advertising are derivative of those suffered by consumers who are deceived by the advertising . . . , *the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute.*" *Id.* at 1391 (emphasis added). Here, Plaintiffs injuries are not derivative of injury to a fellow commercial actor. *See supra* at 13-14.

    *Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, 2014 U.S. Dist. LEXIS 42063 (D. Mass. Mar. 27, 2014), in turn, assessed whether plaintiffs asserted a claim for false association under the Lanham Act – not a claim for false advertising. Plaintiffs alleged they were harmed by lost revenues due to Uber offering Uber vehicles as alternatives to taxis. *Boston Cab Dispatch*, 2014 U.S. Dist. LEXIS 42063, at *13. The court found that the entry of these Uber vehicles into the market has nothing to do with any alleged confusion about the relationship between Uber and Boston Cab and therefore, any harm due to those new alternatives lacks the requisite causal connection to Uber's alleged use of Boston Cab's marks. *See id.*

defendant by the plaintiff.  *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996) (citation omitted); *see also* 15 U.S.C. § 1125(a)(1)(A).

## A.   Plaintiffs Have Valid Marks That Are Entitled to Protection

Contrary to Defendants' contentions, the Complaint identifies valid marks that are entitled to Lanham Act protection.  "While registration is prima facie evidence of the validity of a mark, plaintiff can also protect an unregistered mark or trade name by demonstrating either that it is inherently distinctive or has attained secondary meaning." *Becoming, Inc. v. Avon Prods*., 2001 U.S. Dist. LEXIS 11929, at *8 (S.D.N.Y. Aug. 15, 2001).  A mark develops secondary meaning when it "identif[ies] the source of the product rather than the product itself."  *N.Y.S. Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 427 (W.D.N.Y. 2010).

Here, the Complaint alleges that XYZ's vehicles bear a sticker with XYZ's service mark (XYZ's name, logo, and design); a sign with XYZ's service mark and the driver's XYZ "radio" number; and XYZ's name on the license plate.  Compl. ¶ 89.  Similarly, Elite's vehicles bear Elite's name and the driver's Elite franchise number on the license plate.  *Id.* ¶ 90.  As these features identify the vehicles as being owned and/or operated by XYZ or Elite, *id.* ¶¶ 89-90, Plaintiffs identify valid marks entitled to protection.  *See Courtenay Commn'cs Corp. v. Hall*, 334 F.3d 210, 214 (2d Cir. 2003) (plaintiff's allegations, "although imprecise, … are sufficient to allege that [its] mark is distinctive," either inherently or by having acquired secondary meaning).  At minimum, this "inherently factual inquiry" cannot be resolved on a motion to dismiss.  *N.Y.S. Elec.*, 697 F. Supp. 2d at 428; *see In re Conn. Mobilecom, Inc*., 2003 U.S. Dist. LEXIS 23063, at *10 (S.D.N.Y. Dec. 23, 2003) ("the issue of whether a trade name has acquired secondary meaning is a question of fact and therefore not appropriately decided on a motion to dismiss").

## B.   Defendants Used Plaintiffs' Marks in Commerce

A mark on services is "use[d] in commerce" when: (i) it is "used or displayed in the sale

or advertising of services and the services are rendered in commerce"; or (ii) "the services are rendered in more than one State . . . and the person rendering the services is engaged in commerce in connection with the services."  15 U.S.C. § 1127.

Here, the Complaint alleges that Defendants provide services in New York and other states using vehicles bearing Plaintiffs' marks.[7]  Compl. ¶¶ 1-2, 11, 27, 89-91.  It further alleges that Defendants make false statements regarding their association with Plaintiffs over the internet and, therefore, in New York and other states.  *Id*. ¶¶ 70, 92.  Therefore, the Complaint alleges Defendants' used Plaintiffs' marks in commerce.

### C.   Defendants' Conduct Is "Likely to Cause Confusion"

Defendants wrongly contend that "[t]he Lanham Act protects only against confusion that actually affects the purchasing . . . of the goods or services in question."  Defs. Br. at 16.  The statute and case law are clear:  Plaintiffs need only allege that Defendants' conduct "is ***likely to cause confusion*** . . . ***as to the affiliation, connection, or association*** of [Defendants] with [Plaintiffs], or as to the origin, sponsorship, or approval of [Defendants'] goods, services, or commercial activities by [Plaintiffs]."  *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (citing 15 U.S.C. § 1125(a)(1)(A)) (emphasis added); *see also, e.g. Perry v. Int'l Transp. Workers' Fedn.*, 750 F. Supp. 1189, 1208-09 (S.D.N.Y. 1990) (claimant need only show a "likelihood" of confusion, rather than actual damages or actual confusion).

Here, the Complaint alleges facts sufficient to meet this standard.  *See, e.g.*, Compl. ¶¶ 88, 158 ("Defendants' representations and business practices are likely to cause confusion"), *id.* ¶ 91 ("consumers are likely to believe Plaintiffs are affiliated or associated with Uber and/or that

---

[7]    For this reason, Defendants' case law (Defs. Br. at 15) is inapposite.  *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 623-35 (6th Cir. 1996) (defendants never used Holiday Inns's registered trademark ("1-800-HOLIDAY") and "never advertised or publicized anything to do with Holiday Inns or its telephone number," but instead took advantage of confusion that already existed among the misdialing public).

Plaintiffs sponsor or partner with Uber").  Nothing further is required to state a claim for false association under the Lanham Act, and none of Defendants' cases hold otherwise.[8]

Indeed, virtually identical allegations have been sustained by at least one court in similar actions against Uber.  For example, in *Yellow Group LLC v. Uber Techs. Inc.*, 2014 U.S. Dist. LEXIS 94093 (N.D. Ill. July 10, 2014), taxi plaintiffs asserted a claim for misrepresentation of association under the Lanham Act based upon allegations that, *inter alia*, (i) "Uber has misrepresented an association by occasionally referring to its 'fleet partners'"; and (ii) "when a customer orders a taxi or livery vehicle via Uber, a vehicle bearing the Flash or Yellow trademarks will often arrive to pick up the fare."  *See id.* at *15.  The court denied Uber's motion to dismiss this claim, finding that Uber's reference to "fleet partners" and use of cars bearing plaintiffs' trademarks "are likely to cause confusion among customers."  *See id.* at *15-16.  The same result follows here.

Finally, because the Lanham Act protects against conduct that is likely to cause confusion as to the affiliation with or approval of Defendants by Plaintiffs, Defendants' argument concerning the "point of sale" is misplaced.  In any event, it relies on a factual determination as to when the point of sale takes place (*i.e.*, when a customer requests and confirms transportation through the Uber App as Defendants suggest, or when a customer gets into a vehicle to accept a ride, when they pay for a ride, or otherwise).  This factual finding cannot be resolved on a motion to dismiss.  *See Woolcott*, 2014 U.S. Dist. LEXIS 63043, at *17.

## III.   PLAINTIFFS' THIRD AND FOURTH CAUSES OF ACTION STATE CLAIMS FOR DECEPTIVE ACTS AND FALSE ADVERTISING UNDER THE GBL.

To state claims under GBL §§ 349 and 350, a plaintiff must allege that "(1) the

---

[8]     Defendants' cases note only that "actual confusion" is one of several factors courts consider to assess whether a "likelihood of confusion" exists.  *See* Defs. Br. at 16 (citing *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 580, 582 (2d Cir 1991); *KatiRoll Co. v Kati Junc., Inc.*, 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014)).

defendant's act, practice or advertisement was consumer-oriented; (2) it was materially deceptive and misleading; and (3) that plaintiff was injured as a result." *Verizon Directories Corp. v. Yellow Book U.S., Inc.*, 309 F Supp. 2d 401, 405 (E.D.N.Y. 2004); *see Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450 (E.D.N.Y. 2007) ("the standards under [GBL §§ 349 and 350] are substantively identical").   To prevail on a claim under Section 350, a plaintiff must also demonstrate reliance on defendants' false advertising.  *See Imig, Inc. v. Electrolux Home Care Prods.*, 2007 U.S. Dist. LEXIS 20530, at *43-44 (E.D.N.Y. Mar. 22, 2007) (reliance is an element of a claim under Section 350, but is unnecessary for a claim under Section 349).

### A.    Plaintiffs Have Standing to Bring GBL Claims

The GBL is unique in that it authorizes private actors to effectively "step into the shoes" of the Attorney General.  The statutes specifically state that "any person who has been injured by reason of any violation of [GBL §§ 349 and 350] may bring an action in his own name to enjoin such unlawful act or practice."  GBL §§ 349(h) and 350-e.  A competitor has standing "so long as some harm to the public at large is at issue," and the competitor suffered injury as a result. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted).

Here, the Complaint alleges that Defendants broadly disseminated numerous false or misleading statements on Uber's webpages, in communications to consumers, and in the media about safety measures, Uber's relationship with drivers, and Uber's purported affiliation with Plaintiffs. Compl. ¶¶ 39-94, 132-33, 140-141.  Accordingly, there can be no dispute that Defendants' deceptive acts and practices have a broad impact on the public at large.  *See, e.g., N. State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 12 (2d Dep't 2012) (conduct sufficiently consumer-oriented "where it involved an extensive marketing scheme," "the multi-media dissemination of information to the public," and "potentially affect[ed] similarly situated consumers").  Moreover, it is undisputed that Plaintiffs have alleged they are competitors who

suffered injury as a result of Defendants' deceptive conduct.  *See* Defs. Br. at 17 ("Plaintiffs

claim to be competitors of Uber"); Compl. ¶¶ 94, 121-24, 134, 142.  Nothing further is required

to invoke the GBL, and none of Defendants' cases holds otherwise.

### B.      The Complaint Adequately Alleges That Consumers Relied Upon Defendants' False or Misleading Statements

Finally, Defendants are simply incorrect in contending that Plaintiffs themselves must

rely on Defendants' false or misleading statements to assert a claim under Section 350.  Instead,

Plaintiffs must allege that ***the consumer*** who purchased Defendants' services relied on the false

or misleading statements.[9]  *See, e.g.*, *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 607

(S.D.N.Y. 2012) (must show reliance by consumer).

Here, it is undisputed that the Complaint meets this standard.  *See, e.g.*, Compl. ¶¶ 39, 50,

62, 76, 88, 91, 93-94, 121, 130, 133, 140-41.  These allegations amply support a claim under

Section 350.  *See, e.g.*, *Merck Eprova AG v. Gnosis S.P.A.*, 2011 U.S. Dist. LEXIS 30683, at \*18

(S.D.N.Y. Mar. 17, 2011) (plaintiffs met reliance element with evidence that third-party

manufacturers who bought defendants' products relied on false or misleading statements).[10]

## IV.   PLAINTIFFS' FIFTH CAUSE OF ACTION STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT AND WITH BUSINESS RELATIONS.

### A.      The Complaint States a Claim for Tortious Interference With Contract

To state a claim for tortious interference with contract, a plaintiff must allege: (i) "the

existence of a valid contract between the plaintiff and a third party"; (ii) the "defendant's

---

[9]       Defendants' cases are not to the contrary.  *See* Defs. Br. at 20.  In each case, the plaintiffs themselves were the allegedly deceived consumers, such that the identity of the relying party was not at issue.  *Leider v. Ralfe*, 387 F. Supp. 2d 283, 286 (S.D.N.Y. 2005); *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 4 (1st Dep't 1998), *aff'd*, 698 N.Y.S.2d 615 (1999); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at \*3 (E.D.N.Y. July 17, 2013); *McGill v. GMC*, 231 A.D.2d 449 (1st Dep't 1996).

[10]      Defendants further argue that "[e]ach of the defenses to the Lanham Act claims applies with equal force to Plaintiffs' claims under the GBL," and that the "GBL claims should be dismissed for the same reasons as the Lanham Act claims."  Defs. Br. at 19.  Plaintiffs' arguments in opposition to each of those purported defenses (*see supra* at 6-14) in turn, applies with equal force to Plaintiffs' GBL claims and are incorporated herein by reference.

knowledge of that contract"; (iii) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (iv) "actual breach of the contract"; and (v) "damages resulting therefrom." *Bernato v. Arthur J. Gallagher & Co.*, 2015 U.S. Dist. LEXIS 102674, at *16 (S.D.N.Y. Aug. 5, 2015) (citations omitted).

Defendants **do not dispute** that the Complaint adequately alleges the second, third, fourth, and fifth elements of this claim.  Instead, Defendants focus solely on the first element – insisting that the Complaint "fail[s] to identify any specific contract, with any specific employees, with which Uber allegedly interfered."  Defs. Br. at 21.  Defendants further request that this Court make a factual determination that the contracts at issue are "terminable at will" without even reviewing the contracts.  Defendants' arguments should fail.

1.  The Complaint Sufficiently Alleges the Underlying Contracts

Defendants' argument that "Plaintiffs fail to identify any specific contract, with any specific employees, with which Uber allegedly interfered" (Defs. Br. at 21) is incorrect.  The Complaint identifies the specific agreements at issue, as well as particular provisions with which Defendants have interfered.  *See* Compl. ¶¶ 95-98, 165-66.  It further identifies the third parties as XYZ's own drivers – **a finite and readily identifiable group** – and provides sufficient information to show "that [the affected relationships] could be identified." *Brill Physical Therapy, P.C. v Leaf*, 2011 NY Slip Op 33903[U], at *4-9 (Sup. Ct. N.Y. County 2011) (plaintiff stated claim based on its patient list, comprising "potentially 1500 contracts with which [defendant ] interfered").  This is all that is required to plead this claim.[11]

---

[11]      Defendants' cases are not to the contrary.  *See* Defs. Br. at 21 (citing cases).  In neither of these cases did the court deem plaintiff's failure to name the specific third-parties, **by itself**, sufficient reason to dismiss the complaint.  Rather, in each case, the complaint also failed even to allege **what the contracts were** in the first place. *See Bose v. Interclick, Inc.*, 2011 U.S. Dist. LEXIS 93663, at *29-30, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) (plaintiff did not allege "any facts regarding the nature of the [allegedly affected agreements]" and provided "no facts regarding the terms of the contracts"); *AIM Int'l*, 2003 U.S. Dist. LEXIS 8594 (S.D.N.Y. May 21, 2003) (defendants argued, and plaintiffs conceded, that complaint failed to allege "what contracts were interfered with").

Because the Complaint adequately pleads a valid contract and Defendants do not dispute the Complaint alleges the remaining elements of XYZ's cause of action (*see* Compl. ¶¶ 95-113, 121-27, 163-70), Defendants' challenge to XYZ's tortious interference with contract claim should be denied.  Indeed, virtually identical allegations have been sustained by at least one court in similar actions against Uber.  *See, e.g.*, *In Yellow Group LLC*, 2014 U.S. Dist. LEXIS 94093, at *1-2, 19-21 (tortious interference with contract claim adequately pled given allegations that Uber uses plaintiffs' drivers in violation of their agreement not to work with a competing service and encourages drivers to violate local laws incorporated by reference into the contracts).[12]

> 2.      The Court Should Decline Defendants' Request For a Finding of Fact Regarding Whether The Contracts At Issue Are "Terminable at Will"

The Court should also decline Defendants' request for a finding of fact regarding whether XYZ's contracts with its drivers are "terminable at will" without even reviewing the contracts. The law is clear – *and Defendants' own case law confirms*[13] – that even a contract lacking a definite term is not deemed "terminable at will" where it contains some "express or implied limitation" on the right to terminate.  *See, e.g.*, *Rooney v. Tyson*, 91 N.Y.2d 685, 690-91 (1998) (a contract with a "definite employment duration" *or* some "express or implied limitation" on one party's right to terminate is *not* terminable at will); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d

---

[12]      "[A] claim for tortious interference with contract . . . has the same key elements under New York law as under Illinois law."  *Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, 2007 U.S. Dist. LEXIS 3962, at *11 (C.D. Ill. Jan. 18, 2007).

[13]      *See* Defs. Br. at 20-21 (citing *Wright v. Cayan*, 817 F.2d 999, 1003-04 (2d Cir. 1987) (contract is not terminable at will where it limits the parties' right to terminate, and "if there were an express limitation on the employer's right of discharge it would be given effect *even though the employment contract was of indefinite duration*" (emphasis added)).  Of Defendants' five remaining cases on this point, three say *literally nothing* about a contract lacking "a definite term," and *nowhere mention* the standards for determining whether a contract is terminable at will.  *Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y. 2004) (no dispute over at will status); *Am. Preferred Prescription, Inc. v. Health Mgmt.*, 252 A.D.2d 414 (1st Dep't 1998) (same); *Miller v. Mt. Sinai Med. Ctr.*, 288 A.D.2d 72 (1st Dep't 2001) (same).

The two remaining cases are similarly unavailing – as neither involved claims of "express limitations" in the underlying contract.  *Brinn v. Syosset Pub. Lib.*, 61 F. Supp. 3d 247, 257 (E.D.N.Y. 2014) (noting only that employment for indefinite term is *presumed* to be "at will"); *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005) (pleadings did not allege existence of contract, and thus plaintiffs' employment was assumed to be at-will).

847, 851-52 (2d Cir. 1985) (same).

Here, such restrictions exist – and although these need not be plead, XYZ respectfully requests leave to amend the Complaint to include them should the Court find otherwise.  Put differently, Defendants raise an issue of fact that cannot and should not be resolved on a motion to dismiss.  *See, e.g., Gorrill*, 761 F.2d at 851-52 (the "express limitation" exception to the at-will rule is generally a "context-sensitive" issue for the trier of fact); *Jin Zhao v. State Univ. of N.Y.*, 472 F. Supp. 2d 289, 315-16 (E.D.N.Y. 2007) (finding issue of fact as to whether contract was subject to express limitation such that it was no longer terminable at will).  If, however, the Court requires supplemental allegations in an amended pleading, XYZ will provide them.[14]

### B.    The Complaint States a Claim for Tortious Interference With Business Relations

To state a claim for tortious interference with business relations or prospective contractual relations, plaintiff must allege: "(1) the existence of business relations with a third party; (2) defendant's interference with those business relations; (3) that defendant acted with the sole purpose of harming [plaintiff] *or* used dishonest, unfair or improper means; and (4) injury to the business relationship."  *Brown v. AXA Re*, 2004 U.S. Dist. LEXIS 7624, at *20-22 (S.D.N.Y. May 3, 2004); *PKG Group, LLC v. Gamma Croma, S.p.A*, 446 F. Supp. 2d 249 (S.D.N.Y. 2006).

"[D]ishonest, unfair, or improper means" generally requires allegations of: (i) misconduct that constitutes "either a crime or an independent tort," *PKG Group*, 446 F. Supp. 2d at 251, *or*

---

[14]    Notably, even if these contracts *were* deemed to be terminable at will (which they are not), the law is clear that even at-will contracts may give rise to tortious interference claims.  *See, e.g., Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (denying motion to dismiss claim for tortious interference with at-will contractual relations); *Coliniatis v. Dimas*, 848 F. Supp. 462, 470 (S.D.N.Y. 1994); *Cohen v. Davis*, 926 F. Supp. 399, 403-04 (S.D.N.Y. 1996); *Sullivan v. Brodsky*, 2009 U.S. Dist. LEXIS 72564, at *1, 11-12 (S.D.N.Y. Aug. 17, 2009) (noting that claim is permissible, but dismissing because defendant was not a third-party).  Courts often classify at-will contracts as a species of "prospective contractual relations," and re-label the claims accordingly.  *See, e.g., Coliniatis*, 848 F. Supp. at 470 (claim for tortious interference with contract terminable at will "falls into the same category as interference with prospective contractual relations").  As the elements for tortious interference with an at-will contract (or with "prospective contractual relations") generally mirror the requirements for pleading tortious interference with business relations, they will be addressed in more detail below.  *See infra* at 22-25.

(ii) economic pressure that is "extreme and unfair," *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192-93 (2004). An "independent tort" may be pled by allegations of unfair competition in violation of the Lanham Act or state statutory or common law. *See, e.g.*, *Transaero, Inc. v. Chappell*, 2014 U.S. Dist. LEXIS 62635, at *43-44 (E.D.N.Y. May 6, 2014); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653, at *12-13 (S.D.N.Y. Dec. 16, 1996).

Here, Defendants have not challenged XYZ's allegations as to the first or second elements of this claim. Accordingly, XYZ focuses on the elements of wrongful means and the harm caused by Defendants' misconduct.

1.   <u>The Complaint Alleges the Use of Improper or Wrongful Means</u>

Contrary to Defendants' contentions, the Complaint pleads the requisite "independently tortious" or "wrongful" conduct. It alleges that Defendants employed improper means to tortiously interfere with XYZ's business relations by engaging in anticompetitive behavior in violation of the Lanham Act and New York statutory and common law. Among other things, Defendants are alleged to have:

- Deliberately misrepresented their safety measures and purported relationship with drivers, attracting clients and inducing XYZ drivers to drive for Uber (*id.* ¶¶ 8-77);

- Misappropriated XYZ's labors, skills, expenditures, and goodwill by inducing XYZ's drivers to drive for Uber using XYZ's training, licensing, and service-marked vehicles (*id.* ¶¶ 28-29, 36-38, 70-71, 88-94); and

- Offered XYZ drivers higher wages, which are made possible (i) by the above-described misappropriation; and (ii) by Uber's refusal to adhere to the same TLC rules that XYZ (like all other black car companies) must follow (*id.* ¶¶ 20, 24-26, 28-29, 34-69, 78-94, 100-103).

These allegations – which set forth misrepresentations, unfair economic pressure, and anticompetitive conduct in violation of federal and state law – are more than adequate to satisfy the "wrongful means" element of this claim. *See, e.g.*, *Transaero*, 2014 U.S. Dist. LEXIS 62635, at *43-44 ("independent tort" was pled by allegations of unfair competition by

23

misappropriation of plaintiff's "labors, skills, expenditures, or good will"); *Fun-Damental*, 1996 U.S. Dist. LEXIS 18653, at \*12-13 ("unlawful acts" were satisfied by alleged violations of Lanham Act and unfair competition in violation of state statutory and common law).[15]

Finally, where (as here) the requisite wrongful means are alleged, there is no requirement that plaintiff *also* plead that defendants acted with the "sole purpose" of harming plaintiff. *See, e.g.*, *PKG Group*, 446 F. Supp. 2d at 251 (third element is satisfied *either* by malicious sole purpose *or* by improper means). For this reason, Defendants' argument that the Complaint alleges nothing more than competitive conduct in Uber's economic self-interest is a red herring.

### 2.   The Complaint Alleges Proximate Cause

Finally, XYZ has alleged that Uber's tortious interference caused it to suffer damages. Defendants' business model – made possible by its misappropriation of XYZ's expenditures and Uber's disregard of applicable rules – induces XYZ drivers to breach their contracts with XYZ by: (i) accepting Uber hails even as they purport to drive for XYZ; and (ii) requiring them to violate applicable rules and regulations when they drive for Uber. Compl. ¶¶ 20, 28-33, 36-38, 51-61, 63-64, 96-113. Defendants thus benefit from the training and licensing that XYZ provides its drivers – while depriving XYZ of fares its drivers should be generating during such time. *Id.* ¶¶ 102-03, 107-12, 121-27. Defendants' tortious interference has rendered XYZ unable to fulfill customer requests, and has resulted in substantial loss of sales and profits, together with irreparable harm to XYZ's customer relationships, reputation and goodwill. *Id.* ¶ 135. XYZ's goodwill and business reputation are further impaired because Defendants falsely

---

[15]   None of Defendants' citations are to the contrary – as not one involved the use of economic pressure *made possible by the defendants' outright misappropriation of plaintiffs' labor, expenditures, and goodwill. See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 427 (2007) (alleged interference consisted only of "sending regular advertising and soliciting business in the normal course"); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 196 (1980) (mere "persuasion and offer of better terms"); *Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*, 299 A.D.2d 204, 204 (1st Dep't 2002) (plaintiff's former employees had actively sought new employment prior to defendant's involvement, and defendant merely agreed to employment terms dictated by such employees).

associate themselves with XYZ's brand.  *Id.* ¶¶ 88-94, 102-03, 107-12, 121-27.

In some instances, where XYZ has identified drivers driving for Uber in violation of their XYZ contracts, it has been forced to terminate its relationship with them.  *Id.* ¶ 102-03, 124-25. Termination is necessary because a driver's work for Uber not only violates the XYZ contract, but also exposes XYZ to liability for the regulatory and legal infractions that Uber requires of its drivers.  *Id.* ¶¶ 104-13, 126-27.  This causes additional harm to XYZ – which must then recruit, hire, and train replacement drivers.  *Id.* ¶¶ 20, 102-03, 124-25.

These allegations raise a plausible inference both of harm suffered and the requisite causation.  *See, e.g.*, *Transaero, Inc.*, 2014 U.S. Dist. LEXIS 62635, at *43 (causation pled by allegations of lost contracts and business opportunities); *see Yellow Group LLC*, 2014 U.S. Dist. LEXIS 94093, at *19-21 (causation pled by allegations that taxi plaintiffs suffered economic and reputation damage by losing customers to Uber).  No more is required at the pleading stage.

## CONCLUSION

For reasons set forth above, Plaintiffs respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint in its entirety, along with such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

ARKIN SOLBAKKEN LLP

By: */s/ Lisa C. Solbakken*
    Lisa C. Solbakken, Esq.
    Robert C. Angelillo, Esq.
    Deana Davidian, Esq.
    750 Lexington Avenue, 25th Floor
    New York, New York 10022
    (212) 333-0200

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Deana Davidian, hereby certify that on November 13, 2015, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss was electronically served on counsel for all parties.

_Deana Davidian_

Deana Davidian (DD 4181)
750 Lexington Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 333-0200
Facsimile: (212) 704-8370
ddavidian@arkin-law.com