UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XYZ TWO WAY RADIO SERVICE, INC. and ELITE LIMOUSINE PLUS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., WEITER, LLC, HINTER, LLC, GRUN, LLC, UNTER, LLC, SCHMECKEN, LLC, and DANACH-NY, LLC, <br><br> *Defendants*. | Civ. No.: 1:15-03015-FB-CLP <br><br> ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel: 212-704-6000
Fax: 212-704-6288

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

I.     PLAINTIFFS' LANHAM ACT CLAIM FOR FALSE ADVERTISING FAILS AS A MATTER OF LAW ............................................................................................. 4

II.    PLAINTIFFS' FALSE ENDORSEMENT CLAIM FAILS AS A MATTER OF LAW ........................................................................................................................... 7

III.   PLAINTIFFS' CLAIMS UNDER GBL §§ 349 AND 350 FAIL AS A MATTER OF LAW ............................................................................................................................. 8

IV.   XYZ'S TORTIOUS INTERFERENCE CLAIMS ARE DEFICIENT AS A MATTER OF LAW ................................................................................................... 9

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASE**                                                                                                                      **PAGE(S)**

*Brill Physical Therapy, P.C. v. Leaf*,
  2011 NY Slip Op. 33903[U] (Sup. Ct. N.Y. County 2011) ....................................................... 10

*CGS Taxi LLC, et al. v. The City of New York, et al.*,
  No. 653264/2015 (Sup. Ct. New York County) ....................................................................... 1

*Greenwich Taxi, Inc. v. Uber Techs., Inc.*,
  Civ. No. 14-733, 2015 U.S. Dist. LEXIS 106505 (D. Conn. Aug. 13, 2015) .......................... 7

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (1980) ............................................................................................................. 10

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
  86 F.3d 619 (6th Cir. 1996) ..................................................................................................... 7

*Johnson & Johnson v. Carter-Wallace, Inc.*,
  631 F.2d 186 (2d Cir. 1980) .................................................................................................... 6

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
  Civ. No. 15-01257, 2015 U.S. Dist. LEXIS 94181 (N.D. Cal. July 17, 2015) ......................... 5

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
  848 F.2d 34 (2d Cir. 1988) ...................................................................................................... 6

*Melrose Credit Union v. The City of New York*,
  No. 6443/2015 (Sup. Ct. Queens Cty. Sept. 8, 2015 and Nov. 17, 2015) ................................ 1

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
  953 N.Y.S. 2d 96 (2d Dep't 2012) ........................................................................................... 8

*Palmer Kane LLC v. Scholastic Corp.*,
  Civ. No. 12-3890, 2014 U.S. Dist. LEXIS 44881 (S.D.N.Y. Mar. 31, 2014) .......................... 4

*PPX Enters. v. Audiofidelity, Inc.*,
  746 F.2d 120 (2d Cir. 1984) .................................................................................................... 6

*Securitron Magnalock Corp. v. Schnabolk*,
  65 F.3d 256 (2d Cir. 1995) ...................................................................................................... 8

*Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*,
  380 F.3d 126 (2d Cir. 2004) .................................................................................................... 6

## TABLE OF AUTHORITIES
### (Continued)

*Thomas v. City of New York*,
   Civ. No. 12-5061, 2013 U.S. Dist. LEXIS 102814 (E.D.N.Y. July 23, 2013) ..........................9

*Wright v. Cayan*,
   817 F.2d 999 (2d Cir. 1987) ......................................................................................................9

*XYZ Two Way Radio Serv., Inc. v. City of New York*,
   No. 5693/15, 2015 N.Y. Misc. LEXIS 3263 (N.Y. Sup. Queens Cty. Sept. 8, 2015) ...........1, 2

*Yellow Group LLC v. Uber Techs. Inc.*,
   Civ. No. 12-7967, 2014 U.S. Dist. LEXIS 94093 (N.D. Ill. July 10, 2014) ..................3, 4, 5, 7

Defendants Uber Technologies, Inc. ("Uber"), Weiter, LLC, Hinter, LLC, Grun, LLC, Unter, LLC, Schmecken, LLC, and Danach-NY, LLC (collectively, "Uber") respectfully submit this Reply Memorandum in further Support of Defendants' Motion to Dismiss the Complaint.

**INTRODUCTION**

In their Complaint, Plaintiffs devoted no less that 30 paragraphs to alleging that: (i) Uber's App functions as an impermissible "e-hail"; (ii) Uber requires its drivers to "violate" TLC safety regulations; and (iii) Uber otherwise operates in a manner inconsistent with City and TLC ordinances. (Compl. ¶¶ 1-3, 5, 16-38, 108, & 123.)  On its face, the Complaint reflects Plaintiffs' improper effort to convert a disagreement with City regulators into ill-conceived civil claims, to be tried in federal court. (*See* Uber Moving Brief ("Mov. Br."), 1-2 & 6-7.)

Without acknowledging it to this Court, Plaintiffs simultaneously embarked on a litigation campaign in state court seeking a *de facto* reversal of the TLC's approval of Uber's operations in New York. (*See* Mov. Br. 6-7.)  Since Plaintiffs filed this case, the state court has dismissed Plaintiffs' Complaint, rejected similar claims of a medallion lender in a companion case, and denied post-dismissal motions to reargue. *See XYZ Two Way Radio Serv., Inc. v. City of New York*, No. 5693/15, 2015 N.Y. Misc. LEXIS 3263 (N.Y. Sup. Queens Cty. Sept. 8, 2015); *Melrose Credit Union v. The City of New York*, No. 6443/2015 (Sup. Ct. Queens Cty. Sept. 8, 2015 and Nov. 17, 2015).[1]  Following these decisions, Plaintiffs' avenues for raising complaints about Uber's operations to the proper authorities have been foreclosed.

---

[1] Plaintiffs erroneously contend that the issues in these Article 78 proceedings are still open. (Opp'n Br. 6-7 at n.1.) They are not.  The motion to reargue in the *Melrose* case has now been denied and the case remains closed. *See Melrose*, No. 6443/2015 (Nov. 17, 2015).  The "new" case to which Plaintiffs refer, *CGS Taxi LLC, et al. v. The City of New York, et al*., No. 653264/2015 (Sup. Ct. New York County), does nothing more than re-raise the issues decided in Plaintiffs' TLC case, and there is no basis to expect that the Court will do anything other than continue to uphold the TLC's determinations.

Left with no other option, Plaintiffs effectively abandon what was, initially, their core contention, relegating it to a single footnote. (Opp'n Br. 6-7 at n.1.)  Thereafter, to justify civil claims that are deficient as a matter of law, Plaintiffs resort to badly misquoting – or simply quoting irrelevant portions of – statements on Uber's website that Plaintiffs wish to portray as "misleading."  For example, Plaintiffs quote the following sentence, which allegedly appears on Uber's "Rider Safety" web page: "Ridesharing and livery drivers in the U.S. are screened through a process that includes county, federal and multi-state criminal background checks." (Opp'n Br. 3; Compl. ¶¶ 45-46.)  Plaintiffs claim that the quote is misleading because the process is different in New York, yet in advancing that contention, Plaintiffs simply *leave out* the fact that Uber's Rider Safety page reads: "* In New York City, criminal background checks are conducted by the Taxi and Limousine Commission ("TLC") according to their licensing standards."  (Mov. Br. at Berman Decl., Ex. D.)  Put simply, Uber's "Rider Safety" statement speaks directly to New York-specific requirements and is completely true and correct.  Plaintiffs quote the website only in part in order to make it *appear* misleading, and then argue that a contrary determination would require the resolution of a "fact issue" at the dismissal stage.

Equally deceptive, Plaintiffs refer consistently to statements by Uber that simply have nothing to do with New York, *as if* they were somehow relevant to this case.  For example, Plaintiffs quote and attach web pages regarding becoming an Uber driver-partner in *New Jersey* and *Connecticut*, entitled "FAQ – Uber New Jersey" and "FAQ – Uber Connecticut."  (Opp'n Br. 8 and Angelillo Aff., Exs. 2-3.) Plaintiffs claim that these web pages create a misleading impression regarding Uber's compliance with TLC licensing regulations *in New York* because, in theory, drivers licensed under New Jersey or Connecticut regulations could pick up passengers outside New York, drop them off in New York, and then pick up *new* passengers in New York.

*See id.* Again, Plaintiffs omit an explicit statement from the accused web page that removes any hint of confusion. On both the New Jersey and Connecticut pages, Uber tells potential driver-partners, "You **CANNOT** pick up anywhere in New York State. You can drop-off in NY, but would have to return to [CT or NJ] to pick up your next rider." (Angelillo Aff. Exs. 2-3 (emphasis in original).) In actuality, Uber's online statements specifically address the theoretical "concern" Plaintiffs raise – and preempt it. So Plaintiffs simply leave it out of the Complaint. Even at the dismissal phase, the Court is not required to accept such deceptive allegations as true, and should reject Plaintiffs' sleight of hand. (*See* Mov. Br. 5.)

In addition to misrepresenting Uber's public statements, Plaintiffs flatly mischaracterize prior federal court rulings regarding Uber. For example, in support of their false endorsement claim, Plaintiffs cite *Yellow Group LLC v. Uber Techs. Inc.*, Civ. No. 12-7967, 2014 U.S. Dist. LEXIS 94093 (N.D. Ill. July 10, 2014) as if to falsely suggest that Lanham Act claims like Plaintiffs' survived dismissal. (Opp'n Br. 17.) Exactly the ***opposite*** is true. *Yellow Group* involved two false endorsement claims – one by a yellow cab company and one by a group of livery drivers. *See* 2014 U.S. Dist. LEXIS 94093 at *3, *14. The court allowed the false association claim by the taxi plaintiffs to proceed based on the specific allegation that Uber used an image of Plaintiffs' actual taxi in an advertisement, while the court ***dismissed*** the false association claim of the livery plaintiffs – whose allegations actually were akin to Plaintiffs' – on the ground that it was "highly unlikely that a customer would even know that he or she was riding in a" vehicle associated with the livery plaintiffs, and thus unlikely that the customer "would therefore infer that" that the livery plaintiffs were "one of Uber's "partners." *Id.* at *3, *14, *19. This Court should do the same thing.

-3-

In sum, Plaintiffs have already attempted to obtain the relief they want – to put Uber out of business in New York and regain lost market share – through all appropriate channels. Both the TLC and New York's state courts have rejected Plaintiffs' arguments and have determined that Uber is operating in New York in compliance with all applicable regulations. Plaintiffs should not be permitted to circumvent local courts and regulators by reconfiguring their defeated contentions and advancing them in the form of civil claims in federal court.

## I.
## Plaintiffs' Lanham Act Claim For False Advertising Fails As A Matter of Law

Plaintiffs' false advertising claim under the Lanham Act fails for at least five reasons:

*First*, Plaintiffs concede that they cannot base their Lanham Act claim on the allegation that Uber does not comply with TLC regulations. (Opp'n Br. 7.) Plaintiffs' claims must be dismissed to the extent they depend on any such argument. (*See* Compl. ¶¶ 16-38, 106-08, 113.)

*Second*, Plaintiffs' contention that Uber is asking the Court to make premature factual decisions is disingenuous. (Opp'n Br. 8-9.) As set forth in the Mov. Br., Plaintiffs cannot manufacture "fact" questions by presenting irrelevant, or only partial, selections of Uber's online statements. "When documents relied upon in the complaint contradict allegations made in the complaint, the court cannot accept as true the contradictory allegations in deciding a motion to dismiss." *Palmer Kane LLC v. Scholastic Corp.*, Civ. No. 12-3890, 2014 U.S. Dist. LEXIS 44881, at *7 (S.D.N.Y. Mar. 31, 2014); *See also* Mov. Br. 8 (collecting cases).[2]

*Third*, Plaintiffs fail to rebut Uber's argument that statements identified by Plaintiffs in the Complaint are non-actionable "puffery." Regarding this issue, Plaintiffs' argument consists

---

[2] Likewise, the Court should not be misled by Plaintiffs' incorrect portrayal of prior decisions involving Lanham Act claims against Uber. Contrary to Plaintiffs' contention, the Court in *Yellow Group* did ***not*** hold, as a matter of law, that allegations regarding Uber's safety and driver screening practices necessarily state claims under the Lanham Act. *Yellow Group* dealt specifically with Uber's operations in Chicago, where the regulations applicable to For Hire Vehicles differ from those here. *Id.* at *21. The fact that a claim relating to Uber's compliance with Chicago regulations was allowed to proceed in part past dismissal has nothing to do with claims relating to Uber's public statements concerning New York, which as set forth above, and in the Mov. Br. are clear and correct in all respects.

of nothing more than another misleading citation to prior precedent, this time *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, Civ. No. 15-01257, 2015 U.S. Dist. LEXIS 94181 (N.D. Cal. July 17, 2015). Contrary to Plaintiffs' portrayal, *L.A. Taxi* specifically ***rejected*** the use of puffery-type statements like those identified in Uber's Motion as bases for a Lanham Act Claim. *See id.* at *14 ("There is no discernible way to measure whether or how Uber might be 'going the distance to put people first.' Similarly, the phrase 'BACKGROUND CHECKS YOU CAN TRUST,' . . .is a general, subjective statement that makes no specific claim about Uber's services. These statements are therefore non-actionable puffery.").

***Fourth***, Plaintiffs fail to make any sense of their effort to manufacture a Lanham Act claim out of Uber's use of the term "driver partner." Plaintiffs focus specifically on Uber's use of "partner" in the statement "[w]hen you partner with Uber, we've got your back." (Opp'n Br. 11.) Plaintiffs' position is mistaken for at least three reasons: (1) the statement "we've got your back" is a statement by Uber ***to*** potential driver partners; it is not advertising directed at consumers; (2) the phrase is vernacular that falls into the category of puffery; and (3) there is nothing false or misleading about the phrase.

Plaintiffs' argument to the contrary is based on the bald assertion that Uber has "little personal contact with their drivers" and "no control" over them. (Opp'n Br. 11.) Even if this were true, it would not render the term "partner" misleading. *See Yellow Gp.*, 2014 U.S. Dist. LEXIS 94093, at *18 (Uber's use of "partners" was "not a misrepresentation of fact, as it could accurately refer to the owners and drivers of independent livery vehicles.").[3] In addition, as they

---

[3] Plaintiffs also argue that "partner" is misleading because Uber uses it in reference to the "insured partners and drivers." Plaintiffs do not explain how or why this is misleading. All drivers who affiliate with Uber in New York City are fully insured, in accordance with the TLC's requirements – a fact repeated throughout Uber's web pages. *See* Nov. 25, 2015 Declaration of Katherine L. McDaniel, Esq. ("McDaniel Decl."), Ex. A ("Any vehicle you want to drive in NYC must have TLC plates, be commercially insured, and be affiliated with a base.").

-5-

do throughout their papers, Plaintiffs omit whole sections of the web pages they rely on, including portions that describe extensive support and services Uber provides to its driver partners. *See, e.g.*, McDaniel Decl., Ex. B ("The TLC requires all applicants to have taken a defensive driving course within the last 6 months, and get examined by a doctor within the last 30 days. You can take defensive driving for free online, or at the Uber office . . . . You can also get examined by a doctor for free at the Uber office." ); Ex. C ("To drive in NYC you need a Taxi and Limousine Commission (TLC) license. Don't worry if you don't have one yet - we can help."; "We can help you get your TLC license, help you find a vehicle, and help you get started. The process is fairly simple and we'll be there for you every step of the way."); Ex. D ("Want to get a new car to use with Uber? We can help connect you to companies who will offer you special rates available to virtually any driver.").

*Fifth*, Plaintiffs fail to explain how Uber's safety statements – even if the Court were to accept, *arguendo*, that they are misleading – proximately injured Plaintiffs. Plaintiffs simply repeat the legal conclusions from their Complaint, *i.e.*, that XYZ and Elite "are competitors who suffered injury as a result of Defendants' misrepresentations." (Opp'n Br. 13.) Plaintiffs do not explain their allegations or offer a justification as to why the Court should accept them. Plaintiffs simply insist that that they are not conclusory, a position that fails as a matter of law. *See McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (Where advertising makes "no direct reference to any competitor's product," plaintiffs must allege "some indication of actual injury and causation to satisfy Lanham Act standing requirements.").[4]

---

[4] Each of the three cases cited by Plaintiffs -- *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 131 (2d Cir. 2004); *PPX Enters. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir. 1984); and *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 188 (2d Cir. 1980) – is distinguishable. These decisions involved allegations that the defendant had falsely advertised its services as actually coming from the plaintiff. Under such circumstances, a plausible inference of proximate causation arose from the nature of the alleged false advertising. Plaintiffs' arguments concerning Uber's statements here make no reference to Plaintiffs' services at all.

## II.
## Plaintiffs' False Endorsement Claim Fails As A Matter Of Law

Plaintiffs' false endorsement claim also fails for at least three reasons:

*First*, as set forth in the Mov. Br., Plaintiffs simply fail to allege that they have protectable trademarks – *i.e.*, marks that are registered or have accrued protectable recognition in the marketplace. (Mov. Br. 14.) Plaintiffs instead rely on two paragraphs of the Complaint (89 and 90), which refer to decals that "identify the vehicles as being owned and/or operated" by XYZ or Elite. (Opp'n Br. 15.) This attenuated allegation falls short of the Lanham Act's requirements. (Mov. Br. 14 (*citing Greenwich Taxi, Inc. v. Uber Techs., Inc.*, Civ. No. 14-733, 2015 U.S. Dist. LEXIS 106505, at *23-24 (D. Conn. Aug. 13, 2015)).) Plaintiffs' contention that the validity and recognizability of their marks is a question of fact (Opp'n Br. 15) is misguided. Plaintiffs have simply failed to allege a necessary element of their claim.

*Second*, Plaintiffs allegations show that if anyone "used" the marks in question, it was Plaintiffs' own drivers. (Mov. Br. 16 (*citing* Compl. ¶¶ 32-33).) Plaintiffs do not rebut this point nor dispute that courts interpret the "use in commerce" requirement strictly. (*See* Mov. Br. 15 (*citing Holiday Inns, Inc. v. 800 Reservation, Inc.,* 86 F.3d 619, 625 (6th Cir. 1996)).)

*Third*, Plaintiffs provide no response to Uber's argument that Plaintiffs failed to allege a "likelihood of confusion" that affects consumer purchasing behavior because all alleged "use" of Plaintiffs' marks occurs *after* the point of sale. (Mov. Br. 16 (*citing* Compl. ¶¶ 32-33).) As set forth above, Plaintiffs' argument on this point consists of misleading claim that the *Yellow Group* case sustained "virtually identical allegations . . . against Uber." (Opp'n Br. 17.) In fact, Y*ellow Group* dismissed the false endorsement claims of the livery plaintiffs in that case. *See* i*d.* at *19.

### III.
### Plaintiffs' Claims Under GBL §§ 349 And 350 Fail As A Matter of Law

In the Mov. Br., Uber explained that Plaintiffs' GBL claims were subject to dismissal for the same reasons as the Lanham Act claims and because Plaintiffs lack standing under the GBL.

Plaintiffs' lack standing under the GBL because their core claim is that they have suffered economic injury, not that the consumer public has been harmed. (Mov. Br. 17-18.) In arguing the contrary, Plaintiffs flatly misstate the law, claiming that would-be competitors have standing under the GBL "so long as some harm to the public at large is at issue' and the competitor suffered injury as a result." *Id.* This is not correct; would-be competitors have standing under the GBL only in narrow circumstances, and only where the "core," of their claim is injury to the public interest. (Mov. Br. 16-18 (*citing, inter alia, Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).)

The Second Department's decision in *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S. 2d 96, 99 (2d Dep't 2012), on which Plaintiffs rely, is distinguishable. There, the main allegation was that the defendant steered insureds to car repair shops that used shoddy aftermarket parts, causing injury to the public. *See id.* Although the plaintiff's auto-body shop suffered an incidental loss of business, the core allegation was that consumers were receiving substandard repair work on their automobiles. *See id.* at 102.

Finally, Plaintiffs cite ¶¶ 39-94, 132-33, and 140-41 of the Complaint, which allege that Uber's purportedly misleading statements were made on the Internet, and argue that – because of the medium – Uber's statements had a "broad impact on the public at large." (Opp'n Br. 18.)

Under Plaintiffs' theory, any claim of false advertising made online would confer standing on would-be competitors to bring claims under the GBL. (Mov. Br. 17-19.) [5]

### IV.
### XYZ's Tortious Interference Claims Are Deficient As A Matter of Law

In the Mov. Br., Uber explained that XYZ's claim for interference with existing contracts was deficient because the Complaint failed to allege that XYZ's contracts were for a term certain and failed to identify any specific drivers with whose contracts Uber allegedly interfered. (Mov. Br. 20-21 (collecting cases).) XYZ does not deny either deficiency.

Instead, XYZ argues that determining whether its purported contracts with its drivers are for a term-certain requires a premature "factual determination." (Opp. Br. 21-22.) XYZ's position fails. First, the facts concerning XYZ's driver contracts are squarely in XYZ's possession. XYZ does not clearly allege the nature of its driver contracts because it knows that a straightforward recitation of the facts would undermine its claim. XYZ is not entitled to create a "question of fact" by intentionally omitting facts known to it. (Mov. Br. 21 (*citing Wright v. Cayan,* 817 F.2d 999, 1002 (2d Cir. 1987) (where complaint omits allegations concerning duration of contract, courts presume employment to be at will)).) The law is clear that XYZ had an obligation to plead that its driver contracts were for a term certain in order to state a claim for tortious interference. (Mov. Br. 21.) It failed to do so and its claim must be dismissed.[6]

---

[5] Plaintiffs' contention that the gravamen of their claim is harm to consumers is also undermined by the allegations in their Complaint and statements from their Opp'n Br. (*See, e.g.*, Opp'n Br. 13 ("the Complaint adequately alleges that Plaintiffs are competitors who suffered injury [because] customers and drivers choose to use Uber rather than Plaintiffs' services, causing Plaintiffs to lose significant revenue and suffer irreparable harm to their customer relationships, reputation, and goodwill."); *see also* Compl. at ¶ 37 (alleging that "Defendants compete unfairly against Plaintiffs"), ¶ 38 (Defendants "have a substantial (and unfair) competitive advantage"), ¶ 94 (alleging that "Plaintiffs' reputation and good will is damaged by this likelihood of confusion"), ¶ 103 (alleging that "Defendants' wrongful interference has rendered XYZ unable to fulfill customer requests, resulting in a substantial loss of sales and profits, together with irreparable harm to XYZ's customer relationships, reputation and goodwill").)

[6] In its brief, XYZ vaguely states only that "restrictions exist" on its ability to terminate its drivers. (Opp. Br. 22.) First, the meaning of this assertion is far from clear. Regardless, XYZ cannot correct deficiencies in its Complaint by making new allegations in its memorandum of law. *See Thomas v. City of New York*, Civ. No. 12-5061, 2013

XYZ also wrongly contends that it was not required to identify specific drivers whose contracts were interfered with, but only a "finite and readily identifiable group" of contracts (Opp'n Br. 20 (*quoting Brill Physical Therapy, P.C. v. Leaf*, 2011 NY Slip Op. 33903[U], at *4-9 (Sup. Ct. N.Y. County 2011)).) Yet *Brill*, upon which Plaintiffs rely, actually supports Uber's argument. There, the plaintiff alleged that a former employee used the plaintiff's password-protected, confidential list of client names and contact information to poach those clients. *See Brill*, 2011 N.Y. Slip Op 33903(U), at *7. Although the Complaint did not quote the client list, the Court found the plaintiffs' allegations sufficient because they directly *referred* to the named individuals in the client list, which defendant admitted having. *See id.* Here, XYZ has not identified a single driver or group of drivers – or a driver list or similar document – that would have given Uber knowledge of which applicants to the Uber platform worked for Plaintiffs.

Finally, XYZ has failed to overcome the fatal deficiencies in its claim for tortious interference with prospective business relationship. As set forth in the Mov. Br., XYZ's claim is that Uber "enticed" XYZ's drivers to affiliate with Uber's platform by offering better pay and better working conditions. (Mov. Br. 22 (*citing* Compl. ¶ 101).) Under established New York law, such perfectly lawful offers cannot support a claim for tortious interference with business relations. (*See* Mov. Br. 23 (*citing, inter alia, Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 196 (1980) (a defendant's "persuasion and offer of better terms" to third parties does not constitute wrongful means)).)

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Mov. Br., Uber respectfully submits that Plaintiffs' Complaint must be dismissed with prejudice, in its entirety.

---

U.S. Dist. LEXIS 102814, at *7-8 (E.D.N.Y. July 23, 2013) ("It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

| | |
|---|---|
| Dated: November 25, 2015 | TROUTMAN SANDERS, LLP |
| | |
| | _____ |
| | Joshua A. Berman |
| | Katherine L. McDaniel |
| | |
| | 875 Third Avenue |
| | New York, New York 10022 |
| | Telephone:  (212) 704-6000 |
| | Facsimile:  (212) 704-8370 |
| | Joshua.Berman@troutmansanders.com |
| | Katherine.McDaniel@troutmansanders.com |
| | *Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

  I, Joshua A. Berman, hereby certify that on November 25, 2015 this document was electronically served on counsel for all parties.

                     _____
                     Joshua A. Berman
                     NY State Bar Number 3990967
                     875 Third Avenue
                     New York, New York 10022
                     Telephone:  (212) 704-6000
                     Facsimile:  (212) 704-8370
                     joshua.berman@troutmansanders.com